Appeal from Third District

In re THOMAS et al.

No. 3429.   Decided June 14, 1920.   (190 Pac. 952.)

1.   CONTEMPT—STATEMENT OF DEPUTY SHERIFF TO COURT NOT
     IN FORM OF AFFIDAVIT HELD SUFFICIENT BASIS FOR CONTEMPT
     PROCEEDINGS.  In contempt proceedings against the attorneys
     of a garnishee bank for advising their client not to comply with
     a court order requiring a safety deposit box to be opened for
     inspection, a statement by the deputy sheriff serving the order,
     made to the court under oath and reduced to writing, *held*
     sufficient under Comp. Laws 1917, section 7060, as a basis for
     an order to show cause why a contempt order should not be
     issued; it not being requisite to give the court jurisdiction that
     the facts appear to the court in the form of an affidavit, desig-
     nated as such.

2.   CONTEMPT—RIGHTS OF ATTORNEYS TO ADVISE NONCOMPLIANCE
     WITH COURT ORDER STATED.  While it is the duty of attorneys to
     promptly obey all lawful orders of the court and to advise their
     clients when called on for advice to obey them, yet it is also
     their duty, in case a reasonable doubt exists respecting the juris-
     diction of the court, or that the order in question was improp-
     erly made, to preserve and protect the legal rights of their
     clients by assailing any order in the proper manner and within
     proper time, in view of Const. art. 1, section 11, providing that
     every injured person shall have a remedy.

3.   CONTEMPT—ADVISING CLIENT, GARNISHED TO DISOBEY ORDER RE-
     QUIRING SAFETY DEPOSIT BOX TO BE OPENED, HELD NOT CONTEMPT.
     Where in garnishment proceedings it was sought to reach the
     contents of a safety deposit box in garnishee's possession, and
     garnishee's attorneys advised it to disobey an order requiring
     the box to be opened, such advice did not constitute contempt
     of court; the attorneys having reason to believe that the order
     was improper.

4.   CONTEMPT—CHARACTERIZING COURT ORDER AS "FOOLISH" OR
     "DAMNED FOOLISH" HELD NOT CONTEMPT.  That a garnishees'
     attorney, after an order has been made requiring the garnishee
     to open a safety deposit box for inspection, has characterized
     the order as a "foolish" or as a "damned foolish" order *held*
     not to constitute contempt.

5.   CONTEMPT—QUESTIONS TO BE CONSIDERED BY REVIEWING COURT IN
     CONTEMPT PROCEEDINGS STATED.  In contempt proceedings, where
     appeals are allowed, it is the duty of the reviewing court to

pass upon the question as to whether the trial court had juris-
diction to enter the judgment or make the order which is made
a basis of the proceedings and whether the acts, words, or con-
duct complained of constituted contempt.

Appeal from District Court, Third District, Salt Lake
County; *H. M. Stephens,* Judge.

D. H. Thomas and Ashby Snow were adjudged guilty of
contempt, and they appeal.

REVERSED and REMANDED, with directions to dismiss.

*James Ingebretsen* and *D. N. Straup,* both of Salt Lake
City, for appellants.

*Frank E. Holman,* of Salt Lake City, for respondent.

FRICK, J.

D. H. Thomas and Ashby Snow, attorneys at law and of-
ficers of this court, were adjudged guilty of contempt by the
district court of Salt Lake county, and they appeal.

The contempt proceedings here in question arose out of
the garnishment proceedings in the case of *West Cache Sugar
Co.* v. *John A. Hendrickson and Lorenzo N. Stohl, defend-
ants, and Zion's Savings Bank & Trust Co., Garnishee and
Appellant,* 56 Utah, 327, 190 Pac. 946, which we have just
considered. A judgment was duly entered in said action
against the defendants Hendrickson and Stohl. The appel-
lants here were the duly authorized attorneys of the Zion's
Savings Bank & Trust Company hereinafter called garnishee,
and in the transactions giving rise to the contempt proceed-
ings they acted as such. The judgment entered in the action
aforesaid not being satisfied, a writ of garnishment was is-
sued therein, which was served on the garnishee on the 7th
day of June, 1919. To the writ of garnishment, in addition
to the usual statutory interrogatories, was added the follow-

ing interrogatory: "Have defendants, or either of them, a safety deposit box in your bank?" The garnishee, in writing and under oath, after answering all of the statutory interrogatories in the negative, answered the special interrogatory just set forth as follows. "Yes; Mr. Lorenzo N. Stohl has." The answers of the garnishee were duly filed in said cause, and the plaintiff did not in any way controvert them, or any of them, within the time it was required to do so under our statute or at any time. On the 27th day of June, 1919, however, at which time the answers of the garnishee had become conclusive as against the plaintiff, it, by its counsel, appeared in the district court, and upon an ex parte oral motion and statement which were based upon the answer of the garnishee, obtained an order from said court, requiring the garnishee to "cause said box to be opened and deliver the property therein to the sheriff of Salt Lake county, who shall take and keep as much of said property and securities as are liable to garnishment and attachment herein." The order was duly served upon the cashier of the garnishee on the afternoon of the day it was issued. Immediately after the order was served the cashier called up the appellant Thomas, and asked his advice with respect to the order. The attorney at once commenced the preparation of a motion or application in said action, in which he, upon various grounds, sought to have said order vacated and set aside. He also forthwith called up the sheriff's office, and informed the sheriff what he contemplated doing, and asked the latter to suspend further action on said order until he had time to present his motion and application to the court to set aside or modify the order. After receiving what he assumed to be assurance from the sheriff that the order would not be immediately pressed, the motion to set aside the order was not forthwith presented to the court. Mr. Thomas also at once took up the matter with one of the judgment creditor's counsel, and, it seems, counsel was inclined to not press the order until Mr. Thomas could present his motion. In the meantime, however, the sheriff was seen by a stockholder of the plaintiff, who insisted upon immediate action. The

deputy sheriff, in whose hands the order was placed, then immediately went back to the bank of the garnishee, and demanded that the cashier forthwith open the safety deposit box and deliver its contents to him; in other words, that the cashier comply with the court's order. The cashier informed the deputy sheriff that two keys were necessary to open the box, that Mr. Stohl had one of them, and that the box could not be opened unless Stohl's key could be obtained. The cashier, however, also sent for Mr. Thomas, and in the meantime made efforts to get into communication with Mr. Stohl, who, it seems, was not within this jurisdiction at the time. The cashier again insisted that the box could not be opened without the key except by the use of force. During the conversation between the deputy sheriff and the cashier Mr. Thomas arrived at the bank, and on seeing the deputy expressed surprise that he had not conformed to the understanding counsel had with him, namely, that the opening of the box would not be pressed at once. The deputy sheriff then informed Mr. Thomas that after he had agreed to suspend immediate action the stockholder aforesaid appeared and demanded that the order be complied with forthwith, and that the deputy sheriff came to the bank pursuant to that demand. Mr. Thomas then informed the deputy sheriff that he had an agreement with one of plaintiff's counsel that he might have time to file a motion assailing the order, and Mr. Thomas, in the presence of the deputy sheriff, again called up the counsel referred to. Counsel was, however, quite busy in one of the departments of the district court, arguing a motion, and nothing definite was agreed upon. Mr. Thomas, however, asked the deputy sheriff to talk to counsel over the phone, which the deputy did, and he subsequently testified that counsed advised him that in view that he was at the bank he should make a formal demand upon the cashier to open the safety deposit box and to deliver its contents to him as a basis for contempt proceedings. Thereupon the deputy sheriff again made a demand that the box be opened, and it was then that the controversy arose between the parties. The cashier insisted that he could not

obtain Mr. Stohl's key, and that he could not open the box without it except by the use of such force as would injure and perhaps destroy the box. The deputy sheriff, upon the other hand, strenuously insisted that the box could be opened by a method which did not require Stohl's key, and which would not injure the box, but he did not at any time disclose what the method he had in mind was, and the cashier and both of the appellants testified that they did not know of such method. The cashier then again called on Mr. Thomas and also on Mr. Snow, who had arrived at the bank in the meantime, for advice. A somewhat heated discussion took place, during which, as the deputy sheriff subsequently testified, Mr. Thomas characterized the order to open the box as a "foolish" order, or as a "damned foolish order," and that Mr. Snow said, "we can't open the box," and, "We won't open the box." Much was said pro and con, and the controversy between the cashier and the attorneys on one side and the deputy sheriff upon the other at times was not conducted in the best of temper. The controversy, however, ended in a refusal by the cashier to open the box, which was subsequently sealed by the sheriff, and has remained in that condition. The deputy sheriff left the bank, and immediately reported to the district court. He told the court what had transpired at the bank, and informed it that the cashier, upon advice of his counsel, the appellants, had peremptorily refused to comply with the court's order to open the box and to deliver its contents to him, whereupon the district court, upon its own initiative, propounded certain questions to the deputy sheriff, which he answered under oath, and which were taken down in shorthand by the official shorthand reporter of the court. After the deputy sheriff's answers to the court's questions and his statements in that behalf had been transcribed into longhand, they were duly filed in the garnishment proceedings. The court then ordered that a notice and a copy of the deputy sheriff's statements be prepared and served upon the appellants and on the cashier, requiring them to show cause why they should not be ad-

judged guilty of contempt for having refused to comply with the court's order to open the safety box and to deliver its contents as in said order directed. The notice and statement were duly served, and the appellants and the cashier forthwith appeared in court in response to such notice, and by their counsel filed a demurrer to the statement of the deputy sheriff, upon which was based the order or notice to show cause why they should not be adjudged guilty of contempt. The demurrer was based upon the ground that the statement of the deputy sheriff was deficient in substance. They also filed a motion to quash the notice and statement upon the ground that the court was without jurisdiction in the premises, stating the reasons therefor. The district court overruled the demurrer and denied the motion to quash. Thereupon all three, the two appellants and the cashier, interposed a plea of not guilty and the court immediately proceeded to hear the evidence. After hearing the evidence, which is very voluminous, the court adjudged all three guilty of contempt, and entered judgment accordingly. Mr. Thomas and Mr. Snow have appealed from the judgment, and have presented the record to this court for review. Mr. Beebe, the cashier, does not appeal, and will therefore receive no further consideration.

The acts and conduct of the appellants constituting the alleged contempt were by all the parties hereto, and by the district court, treated and considered on the theory that they constituted, if anything, a criminal contempt, and for that reason alone, without further considering the character or nature of said acts, words, and conduct, we shall treat them upon the same theory.

The appellants have assigned numerous errors, which, so far as we deem them material, we shall now proceed to consider.

It is insisted that the court was without jurisdiction because no proper affidavit or statement was filed as a basis for the contempt proceedings. Comp. Laws, Utah, 1917, section 7060, so far as material, provides:

"When the contempt is not committed in the immediate view

and presence of the court, or judge at chambers, an affidavit shall be presented to the court or judge of the facts constituting the contempt, or a statement of the facts by the referees or arbitrators or other judicial officer."

It is contended that the statement of the deputy sheriff, which he made to the court and which was reduced to writing, in no sense was an affidavit, and that therefore the statute was not complied with, which, it is contended, is fatal to the jurisdiction of the court. As we have seen, the contempt proceedings were initiated upon the court's own motion, and in the manner stated. It may be conceded that the method pursued by the court in taking the statement of the deputy sheriff by questions and answers and in basing the order to show cause thereon, while somewhat irregular, was, however, not void. A mere cursory reading of the statute will disclose that it is not absolutely essential that under all circumstances the facts upon which the order to show cause is based must be stated in the form of an affidavit. It seems that if the facts appear and are sufficient to authorize the court to act, the form of the statement is immaterial. At all events, the court would not be without jurisdiction merely because the facts were made to appear to the court in the form of a statement rather than in the form of an affidavit and designated as such. Moreover, in this case the court treated the statement of the deputy sheriff precisely as though it were in the form of an affidavit, and the appellants were permitted to assail it both by demurrer and by motion. They could have done no more if the facts had been stated in the form of an affidavit. Again, the statement contained all the essential facts to authorize an order to show cause, and thus the appellants were not prejudiced in any way or to any extent. We are clearly of the opinion that the facts contained in the statement were sufficient to confer jurisdiction upon the court to issue the order to show cause, and that the court did not err in overruling the demurrer and in denying the motion to quash.

It is next insisted that the order to open the safety deposit box was not a "lawful order," and for that reason the ap-

pellants should not have been adjudged guilty of contempt. We have, however, arrived at a contrary conclusion, as appears from the opinion in the case which precedes this one, and hence this contention cannot prevail.

The next assignment is that "the court erred in finding that the acts and conduct of the defendants [appellants] constituted criminal contempt." This, to our minds, presents the serious question in this proceeding. It will be observed that the order was not directed to the appellants, or to either of them, but was directed to the garnishee. It must also be kept in mind that while the appellants were not parties in interest they, nevertheless, were not merely volunteers, but by virtue of their calling, and as attorneys of the garnishee, were called upon to give advice to their client in a matter which was of great importance to such client, as pointed out in the preceding case. While it is the duty of attorneys at law, who are officers of the court,    2 to promptly obey all lawful orders of the court and to advise their clients when called on for advice to obey them, yet it is also their duty, in case a reasonable doubt exists respecting the jurisdiction of the court, or that the order in question was improvidently made, to preserve and protect the legal rights of their clients by assailing any order in a proper manner and at the proper time. Our Constitution (article 1, section 11) provides:

"All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay; and no person shall be barred from prosecuting or defending before any tribunal in this state, by himself or counsel, any civil cause to which he is a party."

This means that courts are open for the purpose of having any order or judgment assailed in the proper manner and at the proper time, precisely the same as they are open for the redress of wrongs and for the enforcement of rights. If, therefore, the appellants had good cause to believe, and in good faith did believe, that the order in question was in excess of the court's power or jurisdiction, or that it was improvidently issued and for that reason vulnerable, or that

the order merely required that the safety box be opened in the usual manner, that is, by using the customer's key in connection with the master key, and they believed that the cashier could not obtain the customer's key, and was thus unable to open the box except by the use of such force as would injure the same or the vaults in which it was placed, then appellants were not only within their rights in assailing it, but it was their duty to assail the order in a proper manner and at the proper time, and to advise their client to that effect. We have very carefully read all of the evidence and the proceedings in this case, and, after doing so, and without pausing here to set forth the evidence, have been forced to the conclusion that what was said and done by counsel, in view of all the circumstances, does not constitute a criminal contempt. The conviction is forced upon us that the appellant Thomas, who was first called upon for advice, in the best of faith assumed that the order of the court could be successfully assailed upon several grounds: (1) That the order was not enforceable because the contents of the safety deposit boxes were not subject to garnishment; (2) that the box could not be opened in the usual manner because the cashier was unable to obtain the use of the customer's key in connection with the master key, and hence the garnishee should not be required to open the box; and (3) that at all events, in view of his communications with counsel for the plaintiff, the box was not required to be opened until after he had time to present a motion to vacate and set aside the order. Such was also the conclusion of Mr. Snow. As pointed out in the preceding case, the law is stated in 20 Cyc. 1022, to the effect that according to the weight of authority the contents of safety deposit boxes are not subject to garnishment. The question had not been before the courts in this jurisdiction, and therefore had not been decided. Moreover, there are some respectable authorities which support the text in Cyc. True, we have since held the law to be otherwise in this jurisdiction. The question was, however, an open one at the time the alleged contempt was committed, and hence any lawyer would have been justified in assailing such an

order, and especially under the circumstances in which
the cashier was placed.  We are clearly of the opinion,          3
therefore, that under all the circumstances appellants
had a clear legal right to assail the order in question, and
therefore their conduct and that of the cashier in refusing
to comply with the order forthwith did not constitute
contempt.

In arriving at such a conclusion we are not unmindful of
the fact that Mr. Thomas was indiscreet in using the ex-
pletive he did in characterizing the order in question as a
"foolish," or as a "damned foolish," order.  What he said
was, however, said long after the order was made, and was
in no sense intended or calculated to intimidate or to impugn
either the motives or the dignity of the court.  As pointed out
by that eminent jurist, Mr. Justice BREWER, *in Re Pryor*,
18 Kan. 72, 26 Am. Rep. 747, much more latitude is allowed
counsel in criticizing the courts after the judgments or
orders have been entered than while the matters are          4
still pending before them and remain undetermined.
The case just referred to is very illuminating and instructive
upon that point, and clearly points out the distinction be-
tween what is harmless criticism and what is really harmful
and contumacious on the part of attorneys and therefore
may be punished as a contempt.  It is manifest to us that
neither one of the appellants by what was said or done at
the somewhat heated interview with the deputy sheriff in-
tended to be disrespectful to the court, much less was it their
intention to willfully or contumaciously advise the violation
of the order.  What was said was said in the heat of con-
troversy, and what was done was done with a view of legally
assailing the order at the proper time and in the proper man-
ner pointed out by our practice.  In this connection it should
also be kept in mind that while it was not essential to the
court's jurisdiction that the garnishee be notified that the
order would be made, yet, in view that it was made upon an
ex parte application, and in view that Mr. Thomas sincerely
questioned the court's power to make such an order, he had
especial reason for assailing it by motion; and to do that was

manifestly proper, if for no other reason than as a basis for
an appeal to this court.

We are also aware that in contempt proceedings ap-
pellate or reviewing courts should be careful in interfering
with the findings and judgments of the courts in such pro-
ceedings.   If the alleged contempt here were a direct con-
tempt, that is, one committed in the presence of the court,
or, even, if the alleged offensive words had been uttered and
the objectionable conduct had occurred before the order in
question was made and while the question whether, it should
or should not be made was still pending, as was the case *in
Re Pryor,* supra, the case would be somewhat different.
Under such circumstances we should long hesitate before we
interfered with the findings of the court and with its judg-
ment adjudging appellants guilty of contempt.   In such cases
the court cannot, with any degree of accuracy, reflect the
proceedings in the record; nor can it accurately describe the
demeanor and conduct of counsel which occurred in the
court's presence.   In a case like the one at bar, however, he
have substantially the same opportunity to judge of the con-
duct and of the acts that the trial court had.   True, that
court had the advantage of hearing and seeing the witnesses
testify, and in case of conflict was in a better position than
we are to pass upon the weight and credibility that should
be given to their statements.   In this case, however,
there is little, if any, real conflict respecting the con-
trolling facts, and where there is such we have fol-
lowed the statements of the deputy sheriff.   We have, how-
ever, also kept in mind that in contempt proceedings where
appeals are allowed it is the duty of reviewing courts
to pass upon at least two questions in addition to such
other propositions of law as may be presented.   One of
those questions is, Did the trial court have jurisdiction
to enter the judgment or make the order which is made
the basis of the contempt proceedings, and did it have juris-
diction to enter the judgment in the contempt proceedings?
The other is, Did the acts, words, or conduct complained of
constitute a contempt?   Attorneys are officers of the court,

and as such may be summarily dealt with in case they offend against the dignity of the court. In case the offense is serious they may be suspended or even disbarred from practice altogether. The consequences may thus be very serious and far-reaching. For that reason, as is well stated by the Supreme Court of North Carolina in the case of *Ex parte Robbins and Jackson*, 63 N. C. p. 312, "* * * the court will not be easily prevailed on to proceed in this manner [contempt proceedings], if it appears that the matter complained of was rather owing to neglect or accident than design. * * *"

Such is also the law in England. Moreover, the mere fact that an attorney has advised his client to act contrary to the order or judgment, or to disregard it, does not necessarily constitute a contempt of court. *In re Kepecs*, 123 N. Y. Supp. 872.

The record in this case shows that the trial court exercised great, almost infinite, patience in trying the case. The appellants were given every opportunity to exculpate themselves, and, as we think, succeeded in doing so. In our judgment, the only serious error of the court lies in the fact that it laid too much stress upon the naked fact that the appellants had advised the cashier to refuse to comply with the order to open the box and deliver its contents to the sheriff. The court seemingly overlooked the fact, and did not give sufficient consideration to appellants' efforts and preparations and purposes to assail the order, and in advising the cashier not to open the box for the other reasons hereinbefore stated.

In view of the circumstances of this case, we are of the opinion that appellants were acting within their rights in what they advised; that the only offense they, or either of them committed was in the use of improper language, which, while not excusable, nevertheless, falls far short of being contumacious, and hence did not constitute a contempt of court.

In view that the proceedings in this case were initiated by the court itself, and that the plaintiff in the principal action

took no part in defending or justifying the court's action, and did not in any way participate in the contempt proceedings, no order with respect to costs will be made.

For the reasons stated the judgment adjudging the appellants guilty of contempt and imposing a fine is reversed, and the cause is remanded to the district court, with directions to vacate and set aside the findings and judgment, and to dismiss these proceedings and to discharge the appellants.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.