THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS J. WOLF, Defendant (Henry J. Romanski, Contemnor-Appellant).
Third District   No. 3—87—0146

Opinion filed October 19, 1987.

Joseph M. Gibson, of Peoria, for appellant.

John A. Barra, State's Attorney, of Peoria (Howard R. Wertz, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

Henry J. Romanski appeals from an order finding him in indirect criminal contempt of court. We reverse.

Romanski was representing his client, Thomas Wolf, on a burglary charge. Wolf's codefendant, Edward Hagerman, who had previously pleaded guilty to the burglary, was called by the State to testify against Wolf. The contempt allegedly occurred during the time of the trial.

At Romanski's contempt hearing, Hagerman testified that on the day before he was to testify against Wolf, while he was in the Peoria county jail, a person he later learned was Romanski approached him. According to Hagerman, Romanski said in a belligerent tone that he was Wolf's attorney; that Hagerman should plead the fifth amendment to the State's questions; that because items had been stolen from the burglary, there was going to be another theft charge; and that on the police report Hagerman had lied, saying that nothing had been stolen. Romanski then told Hagerman that he was going to be given 10 more years in prison. Hagerman testified that Romanski repeated these comments the following day outside the courtroom before Hagerman was to testify.

Romanski testified that he told Hagerman that because certain items had been stolen from the burglarized house and because Hagerman had told the police that nothing had been stolen, the State could bring additional charges against him and he could get 10 more years in prison. Romanski also testified to informing Hagerman that he had a right to take the fifth amendment to any question, that he had a right to an attorney, and that he could request court-appointed counsel. Romanski admitted talking with Hagerman the next day outside the courtroom. In that conversation he told Hagerman that the State could charge him with obstructing justice and that he could still plead the fifth amendment.

Romanski testified that he had asked Hagerman's attorney for permission to question Hagerman. However, he further testified that during the instant interviews he believed that Hagerman was not represented by counsel. Romanski explained that the purpose behind his questioning Hagerman was to learn whether the State had made a deal in exchange for Hagerman's testimony. It was Romanski's professional opinion that Hagerman had given the police contradictory statements regarding his involvement in the burglary. From those statements, Romanski opined that the State could have charged Hagerman with six counts of obstructing justice and that Hagerman could have received an additional 10-year prison term. He denied telling Hagerman that the charges were pending.

Romanski testified that he advised Hagerman of his fifth amendment rights so that if Hagerman chose not to testify truthfully that Wolf was not involved in the burglary, he could still avoid perjury by pleading the fifth amendment. Romanski denied telling Hagerman that he should plead the fifth amendment. Romanski also denied that it was his intention to prevent Hagerman from testifying.

From the foregoing, the trial court found Romanski to be in indirect criminal contempt, both for giving Hagerman false information concerning the additional charges and prison time and for interfering with the testimony of a State witness. The court sentenced him to one year of court supervision and fined him $150.

On appeal, Romanski raises six issues: (1) whether he was proved guilty of indirect contempt; (2) whether the trial court lacked jurisdiction over the defendant due to the State's failure to bring the instant contempt proceeding under a new file number rather than the one used here; (3) whether he was improperly denied a jury trial; (4) whether the trial judge improperly denied Romanski's motion for substitution of judge; (5) whether the trial judge improperly communicated *ex parte* with Romanski prior to rendering his decision; and (6) whether the State's petition for rule to show cause failed to charge the proper mental state. Due to our holding, however, we need only address the first issue.

Criminal contempt is described as conduct that is calculated to embarrass, hinder or obstruct the court in its administration of justice or to derogate from the court's authority or dignity. (*People v. Siegel* (1983), 94 Ill. 2d 167, 445 N.E.2d 762.) Indirect contempt occurs outside the presence of the court and must be established by extrinsic evidence. (*In re Grand Jury Investigation of Swan* (1981), 92 Ill. App. 3d 856, 415 N.E.2d 1354.) Contempt is an extraordinary sanction which must be exercised cautiously. *People v. Bernard* (1979), 75 Ill.

App. 3d 786, 394 N.E.2d 819.

Romanski argues that he was acting in good faith to serve his client. He also argues that he did not knowingly give arguably false information, and that he was entitled to advise Hagerman of his constitutional rights.

The State counters that Romanski's counseling of Hagerman was *per se* improper and unlawful. Specifically, the State contends that Romanski's conduct did not conform to Rule 7—104(a)(2) of the Code of Professional Responsibility (the Code), which states:

"(a) During the course of his representation of a client a lawyer shall not

\* \* \*

(2) give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the interests of such person are or have a reasonable possibility of being in conflict with the interests of his client." 107 Ill. 2d R. 7—104(a)(2).

The State also analogizes this case to the *per se* conflict of interest where an attorney represents both the defendant and the victim, either in the same case (*People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441) or in unrelated cases (*People v. Arreguin* (1981), 92 Ill. App. 3d 899, 416 N.E.2d 402). The State cites no additional supporting authority. For a number of reasons, we disagree with the State.

First, a violation of the Code does not constitute a criminal offense. Whether Romanski's conduct was improper *vis a vis* the Code is a matter for the Attorney Registration and Disciplinary Commission.

Second, *Stoval* and *Arreguin* are not analogous. Hagerman is not the burglary victim, but only a witness. Also, there is no evidence that Romanski's comments to Hagerman prevented Romanski from giving Wolf "the unbiased, forceful representation guaranteed to him by the Constitution." *People v. Arreguin* (1981), 92 Ill. App. 3d 899, 902, 416 N.E.2d 402, 404.

Third, from the record it does not appear that Romanski's opinion regarding additional charges and punishment was unreasonable. The maximum penalty on six counts of obstructing justice, a Class 4 felony, is 18 years. Romanski's estimation of the prison term's length was well within the sentencing range. Further, the State did not contradict Romanski's opinion relating to the additional charges.

Fourth, Romanski directs this court to two cases which are analogous here. In the first case, *Sabado v. Moraga* (1987), 189 Cal. App. 3d 1, 234 Cal. Rptr. 249, the State brought an action against a bait shop owner for violations of the fish and game code. The State ordered the defendant's wife to appear for a deposition. The wife was not repre-

sented by counsel. As the wife was about to be sworn in, the defendant's attorney advised the wife that under California law she could assert a marital privilege not to testify against her spouse. The trial court subsequently sanctioned the defendant's attorney for gratuitously advising the unrepresented wife of the marital privilege. The appellate court reversed, finding that the attorney did not act in bad faith for gratuitously giving advice that was not totally without merit. In so holding, the court stated that "[t]he best interests of our judicial system are not served by keeping our uninformed citizens in the dark." 189 Cal. App. 3d 1, 9, 234 Cal. Rptr. 249, 254.

In the second case, *McNeal v. Hollowell* (5th Cir. 1973), 481 F.2d 1145, the prosecutor had just called to the stand a key witness in a murder trial when the defendant's attorney obtained the court's permission to speak with the witness and his counsel off the record. Following that conference, the witness' attorney announced to the court that his client would claim his fifth amendment privilege and not testify. The State then successfully moved for a *nolle prosequi* in the case. The defendant was later reindicted and convicted on the same charge.

The Fifth Circuit reversed the granting of the *nolle prosequi*. The court disagreed with the State's argument that the defense counsel's discussing the privilege against self-incrimination with a witness and his attorney, and convincing that attorney to have his client plead the fifth amendment, made the witness as unavailable as if the defense had secreted the witness away. The court stated that while the defense counsel may not have had a duty to discuss the fifth amendment with the witness, he was entitled to do so.

Similarly, Romanski was entitled to advise Hagerman of his fifth amendment privilege not to incriminate himself. Certainly it cannot be said that Hagerman was not entitled to know about this constitutional right. Further, there is a lack of evidence that Romanski improperly tried to bribe, coerce, force or threaten Hagerman into claiming the privilege against self-incrimination. *McNeal v. Hollowell* (5th Cir. 1973), 481 F.2d 1145.

Accordingly, we find insufficient proof that Romanski's conduct was calculated to embarrass, hinder or obstruct the trial court in its administration of justice. The judgment of the circuit court of Peoria County that Romanski committed indirect criminal contempt of court is reversed.

Reversed.

HEIPLE and WOMBACHER, JJ., concur.