STATE of Utah, Plaintiff and Appellee,

v.

**Larry N. LONG, Defendant and Appellant.**

No. 910708–CA.

Court of Appeals of Utah.

Dec. 16, 1992.

---

Craig S. Cook (argued), Salt Lake City, for defendant and appellant.

Colin R. Winchester, Gen. Counsel (argued), Salt Lake City, for plaintiff and appellee.

Before BILLINGS, Associate P.J., and GREENWOOD and ORME, JJ.

## OPINION

BILLINGS, Associate Presiding Judge:

Defendant, a licensed attorney, was charged with indirect criminal contempt in violation of Utah Code Ann. § 78–32–1(3) and –1(5) (1990). The trial court found defendant guilty under each subsection. Defendant appeals these convictions. We reverse and vacate both convictions.

## FACTS

On November 30, 1990, Sheldon Saxton (Client) was arrested for driving under the influence of alcohol. He hired an attorney, Larry Long (defendant), to defend him. In July of 1991, Client was convicted, fined $910, and sentenced to serve five days in jail. The court ordered Client to report to the jail on July 19 to begin serving his sentence.

At Client's sentencing hearing, defendant requested an automatic stay of execution of sentence. Defendant asked, "Do we not have a 30-day stay of the execution

of the sentence, pending determination of whether [Client] wants to appeal or not?" The court responded, "Well, if he wants to appeal, I suppose he can, you know, make that decision, but I'm hesitant to put off these orders pending some possibility of an appeal. Unless I have a document here, I don't know if it's going to be appealed or not."

A few hours before Client was scheduled to report to jail, defendant filed a Notice of Appeal and a Motion for New Trial. Defendant did not file a certificate of probable cause, which Utah Rule of Criminal Procedure 27 requires to stay the execution of a sentence. Client, based on the advice of defendant's legal assistant, did not report to jail. Nearly one week later, defendant filed a Motion for Stay Pending Appeal and a Certificate of Probable Cause.

On August 15, Client and defendant appeared before Judge Hutchings to explain Client's failure to report to jail. Client excused his absence by referring to a telephone conversation in which defendant's legal assistant told him he did not need to report to jail because defendant would be filing an appeal. Also, during this hearing, the court examined defendant's understanding of the proper procedure to stay the execution of sentences. Defendant expressed confusion about the requirements.

Near the conclusion of the August 15 hearing, when it was apparent the court was considering charging defendant with criminal contempt, defendant reminded the court it could not charge him with indirect criminal contempt until he had been served with an affidavit describing the allegations against him. The court agreed and rescheduled the hearing. Soon thereafter, the City Attorney served defendant with an Affidavit and Order to Show Cause accusing defendant of criminal contempt.

The affidavit charged that Client failed to report to jail and begin paying his fine because defendant's legal assistant, whose actions are attributable to defendant, incor-

rectly advised Client his case was being appealed and that he, therefore, did not need to begin serving his sentence. The affidavit further alleged that Client violated the court's order because defendant did not file a timely certificate of probable cause.

On November 1, defendant appeared before Judge Hutchings. On November 7, Judge Hutchings concluded defendant had violated subsections (3) and (5) [1] of section 78–32–1 and was guilty of indirect criminal contempt. The trial court found defendant violated section 78–32–1(3) by breaching his duty: to file the appropriate motions when he had the ability to file them, to keep his client accurately informed, to properly supervise his legal assistant, to ensure proper information flowed from his law office to his client, and to remedy any incorrect information relayed from his office to his client. The court sentenced defendant to pay $200 in fines and serve a thirty-day jail term suspended upon completion of forty hours of community service work.

## STANDARD OF REVIEW

On review of indirect criminal contempt proceedings "we accept the trial court's findings of fact unless they are clearly erroneous." *Von Hake v. Thomas,* 759 P.2d 1162, 1172 (Utah 1988). We apply a "correction of error standard," however, when determining whether the court's findings support a legal conclusion that defendant violated a statutory duty. *See State v. Taylor,* 818 P.2d 561, 565 (Utah App. 1991); *State v. Serpente,* 768 P.2d 994, 995 (Utah App.1989).

## NOTICE

Initially, defendant contends the affidavit filed against him did not adequately notify him of the nature of the contempt proceedings against him. The State maintains defendant was properly notified because the

---

**1.** Section 78–32–1(5) defines contempt as "[d]isobedience of any lawful judgment, order or process of the court." Utah Code Ann. § 78–32–1(5) (1990). Because counsel for the State admits on appeal there are insufficient facts to support a conviction under section 78–32–1(5), we do not address this subsection in our opinion but simply accept the State's concession and vacate defendant's section 78–32–1(5) conviction.

affidavit sets out the facts giving rise to the contempt charges. We agree with the State.

Due process requires a person charged with indirect criminal contempt " 'be advised of the nature of the action against him [or her], have assistance of counsel, if requested, have the right to confront witnesses, and have the right to offer testimony on his [or her] behalf.' " *Von Hake*, 759 P.2d at 1170 (quoting *Burgers v. Maiben*, 652 P.2d 1320, 1322 (Utah 1982)). Utah Code section 78–32–3 specifically addresses this notice requirement: "When the contempt is not committed in the immediate view and presence of the court or judge at chambers, an affidavit shall be presented to the court or judge of the facts constituting the contempt." Utah Code Ann. § 78–32–3 (1990). The purpose behind this statutory right to an affidavit is "to ensure that the court and the person charged are informed of the conduct alleged to be contemptuous." *Von Hake*, 759 P.2d at 1170.

■ An affidavit should apprise "the defendant of the particular facts of which he is accused so that he may properly defend against the charge or offer such extenuating and justifiable circumstances as the facts may warrant." *Robinson v. City Court*, 112 Utah 36, 41, 185 P.2d 256, 258 (1947). An affidavit satisfies section 78–32–3 and due process if it sets forth the acts done or omitted that form the factual basis for the contempt charge. *See Coleman v. Coleman*, 664 P.2d 1155, 1157 (Utah 1983) (per curiam).

■ Defendant was convicted of willfully instructing his client to disobey a court order and filing improper motions. The telephone conversation between defendant's legal assistant and Client gave rise to this charge. The affidavit alleges, "[defendant's] legal assistant ... advised [Client] that the case was being appealed and he did not need to serve his sentence." The affidavit continues, "[defendant] had not complied with Rule 27, URCRP regarding Stays Pending Appeal." And, "[defen-

dant] filed ... [the appropriate motions] four days after [Client] was to begin serving his commitment and eight days after the first fine payment was due." The affidavit concludes:

[Defendant] is directly responsible for the actions of a legal assistant.... The advice given [Client] was in error since no appeal had been taken, no hearing had been held, no Certificate of Probable Cause had been issued and the Court had previously denied a[n] oral motion to stay the sentence.

This affidavit clearly notified defendant of "the acts done or omitted in violation of an order of the court." *Coleman*, 664 P.2d at 1157 (citing *De Yonge v. De Yonge*, 103 Utah 410, 135 P.2d 905 (1943)). Thus, defendant's claim of inadequate notice is without foundation.

### SECTION 78–32–1(3) CRIMINAL CONTEMPT CONVICTION

Next, defendant asserts the evidence does not support a finding he willfully neglected or violated a duty of an attorney as required by Utah Code section 78–32–1(3). Section 78–32–1(3) defines contempt as "[m]isbehavior in office, or other willful neglect or violation of duty by an attorney." Utah Code Ann. § 78–32–1(3) (1990). First, defendant claims he did not violate a duty. Second, he asserts any alleged violation was not willful.

#### Duty of an Attorney

■ Utah courts have not previously interpreted "duty" in section 78–32–1(3). Defendant asserts ethical duties cannot sustain a criminal contempt conviction. The State argues the breach of a lawyer's ethical duties, when the violation affects the integrity of the court, satisfies section 78–32–1(3). We agree with the State.

■ Criminal contempt requires that the contempt order be issued to safeguard the integrity of the court. "A contempt order is criminal if its purpose is to vindicate the court's authority, as by punishing an individual for disobeying an order."[2] *Von*

2. "The expression 'dignity of the court' pro-

claims a demand, to all dealing with the court,

*Hake,* 759 P.2d at 1168. Thus, a criminal contempt conviction requires more than an attorney's violation of an ethical duty. *See People v. Wolf,* 162 Ill.App.3d 57, 113 Ill. Dec. 207, 209, 514 N.E.2d 1218, 1220 (1987), *appeal denied,* 118 Ill.2d 551, 117 Ill.Dec. 231, 520 N.E.2d 392 (1988) (holding violation of Code of Professional Conduct not in and of itself criminal contempt). *See also Ex parte Robinson,* 86 U.S. (19 Wall.) 505, 509–512, 22 L.Ed. 205 (1873) (distinguishing court's authority to hold someone in contempt from power to sanction attorney for ethical violation); *In re McCune,* 717 P.2d 701, 709 (Utah 1986) (distinguishing "focus and purpose" of ethical rules and criminal statute implicated by same behavior). Accordingly, a trial court should not use the serious sanction of criminal contempt to punish unethical conduct[3] unless the conduct also impinges upon the integrity of the court.

The Ninth Circuit recognized this nexus in *United States v. Thoreen,* 653 F.2d 1332 (9th Cir.1981), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1428, 71 L.Ed.2d 648 (1982). In *Thoreen,* a district court charged a lawyer with criminal contempt because he, "without the court's permission or knowledge ... substitute[d] someone for his client at counsel table with the intent to cause a misidentification, resulting in the misleading of the court, counsel, and witnesses; a delay ...; and violation of a court order and custom." *Id.* at 1336. In addition to finding an obstruction of justice, the trial court emphasized the lawyer's actions conflicted with three provisions of the Washington Code of Professional Responsibility. *Id.* at 1338.

On appeal, the Ninth Circuit distinguished contempt convictions from ethical sanctions. The court cautioned that defen-

dant's ethical violations alone would not support a criminal contempt conviction unless they amounted to contumacious conduct. *Id.* at 1339–40. The court upheld the contempt conviction because the ethical violation constituted an obstruction of justice, thus threatening the integrity of the court. *Id.* at 1341–42. *See also People v. Wolf,* 162 Ill.App.3d 57, 113 Ill.Dec. 207, 514 N.E.2d 1218 (1987), *appeal denied,* 118 Ill.2d 551, 117 Ill.Dec. 231, 520 N.E.2d 392 (1988) (vacating indirect criminal contempt conviction because lawyer's conduct was not "calculated to embarrass, hinder or obstruct the trial court in its administration of justice," and because "a violation of the Code [of Professional Conduct] does not [per se] constitute a criminal offense").

Likewise, we hold neglect or violation of an ethical duty will support a criminal contempt conviction under section 78–32–1(3), only if the ethical impropriety also impinges upon the integrity of the court.

In the instant case, the trial court relied primarily on the Utah Rules of Professional Conduct to support the requirement that defendant "violate a duty of an attorney." The court found defendant did not keep his client reasonably informed as required by Rule 1.4 of the Utah Rules of Professional Conduct; did not satisfactorily supervise his non-lawyer assistant; and did not ensure proper information flowed from his law office to his client, as required by Rule 5.3 of the Rules of Professional Conduct.

The key question, therefore, is whether defendant's violation of these ethical duties impinged on the integrity of the court. We conclude they did. Defendant—even though he did not file the appropriate documents to stay the sentence—instructed his

---

for proper respect and obedience in its function of interpreting, administering and enforcing the law within its authority to do so." *In re Dodson,* 572 A.2d 328, 332, (Conn.), *cert. denied,* —— U.S. ——, 111 S.Ct. 247, 112 L.Ed.2d 205 (1990).

3. We recognize here, as we have elsewhere, that Utah's Rules of Professional Conduct provide guidance regarding a lawyer's legal obligations. *See State v. Johnson,* 823 P.2d 484 (Utah App. 1991). In *Johnson,* a criminal defendant appeal-

ed his conviction asserting he was denied effective assistance of counsel because a conflict of interest existed between him and his attorney. *See id.* at 487. In analyzing the lawyer's conflict of interest, this court stated, "[w]hile violation of the Rules does not 'create any presumption that a legal duty has been breached' ... courts have referred to the Rules to augment legal principles involving lawyer conduct." *Id.* at 489 (quoting Utah R.Prof.Conduct Scope (1988)).

client not to report to jail.[4] Thus, he advised his client to disobey a lawful court order. Client, relying on defendant's advice, disobeyed the court's order. In sum, defendant violated a duty within the context of section 78-32-1(3) when he instructed his client to ignore a lawful court order, because defendant's ethical violation infringed on the court's integrity.

### Willful Neglect or Violation

Defendant next claims the evidence does not support a finding he acted willfully as required by section 78-32-1(3). Defendant urges the statute requires the commission of a "deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation." The State insists that while the statute requires more than a showing of simple negligence, it does not require a showing of specific intent or bad faith.

Section 78-32-1(3) proscribes "willful neglect or violation of duty by an attorney." The terms "neglect" and "violation" are opposite sides of the same coin. "Neglect" refers to a failure to act and "violation" an inappropriate act. "Willful" modifies both and describes the mental state necessary for criminal liability to attach.

Although no Utah appellate court has specifically defined "willful" in section 78-32-1(3), Utah cases have discussed the degree of intent necessary to sustain a criminal contempt conviction. It must appear "(1), the party knew what was required of him; (2), that he had the ability to comply; and (3), that he wilfully and knowingly failed and refused to do so." *Thomas v. Thomas*, 569 P.2d 1119, 1121 (Utah 1977); *see also Mellor v. Cook*, 597 P.2d 882, 883–84 (Utah 1979). "These three elements must be proven beyond a reasonable doubt in a criminal contempt proceedings." *Von Hake*, 759 P.2d at 1172 (citing *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 444, 31 S.Ct. 492, 499, 55 L.Ed. 797 (1911)). Additionally, negligent or accidental mistakes were not sufficient under Utah common law to sustain a criminal contempt conviction. Utah courts

> "will not be easily prevailed on to proceed in [criminal contempt cases], if it appears that the matter complained of was rather owing to neglect or accident than design."
>
> ... [T]he mere fact that an attorney has advised his client contrary to the order or judgment, or to disregard it, does not necessarily constitute a contempt of court.

*In re Thomas*, 56 Utah 315, 326, 190 P. 952, 956 (1920) (citation omitted). Utah criminal contempt cases have consistently required a showing of deliberate conduct. *See, e.g., Utah Farm Prod. Credit Ass'n v. Labrum*, 762 P.2d 1070, 1075 (Utah 1988) (stating that attorney's "acts, coupled with his knowledge of the duty imposed upon him, clearly evince his knowing and willful refusal to comply with the trial court's order"); *In re Thomas*, 56 Utah at 326, 190 P. at 956 (asserting criminal contempt requires a finding contemnor acted by "design" and not by "neglect or accident").

Similarly, other jurisdictions require deliberate contumacious conduct under their criminal contempt statutes. For example, in *Waste Conversion, Inc. v. Rollins Environmental Services, Inc.*, 893 F.2d 605 (3rd Cir.1990), the trial court held an attorney in contempt because he advised a witness not to go to a deposition. *Id.* at 606. The attorney argued his mistake was unintentional because in his home jurisdiction "filing a motion to dismiss generally was understood as staying discovery." *Id.* at 607. The Third Circuit responded, " '[t]o provide a defense to criminal contempt ... the mistaken [course of action] must be one which was adopted in good faith and which, given the background ... is plausible.' " *Id.* at 609 (quoting *In re Brown*, 454 F.2d 999, 1007 (D.C.Cir.1971)). The court acknowledged, " '[i]n the ordinary case of

---

4. Defendant does not challenge the trial court's decision to hold him responsible for the conduct of his legal assistant. Thus, for the purpose of our discussion, we assume the acts of the legal assistant are imputed to defendant and treat all acts as if done by defendant. Because the issue was not argued, we express no view on the propriety of imposing criminal contempt sanctions under a theory of respondeat superior.

advice to clients, if an attorney acts in good faith and in the honest belief that his advice is well founded and in the just interests of his client, he cannot be held liable for error in judgment.' " *Id.* at 610 (citation omitted).

Likewise, the Florida Court of Appeals refused to sustain a contempt conviction when an attorney missed two hearings because he thought his secretary had filed a voluntary dismissal of the case. *Matter of Goldman,* 546 So.2d 779, 780 (Fla.Dist.Ct. App.1989). The court held the attorney's conduct "did not evince a willful disregard for the orderly administration of justice." *Id.* at 781.

We agree the criminal contempt power should only be used to sanction deliberate contumacious acts or omissions. As the United States Supreme Court has observed: "The very amplitude of the [contempt] power is a warning to use it with discretion, and a command never to exert it where it is not necessary or proper." *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 451, 31 S.Ct. 492, 502, 55 L.Ed. 797 (1911). Based on the foregoing authority, we hold that "willful neglect or violation" under section 78–32–1(3) requires a showing that defendant intended his acts to obstruct the judicial process.

■ Essentially, defendant is charged with advising his client to disobey a court order. The facts, therefore, must support a finding beyond a reasonable doubt that defendant knew the proper procedures to stay sentences, knew he had not complied with them, and nevertheless advised his client to disobey a lawful court order.

The trial court cursorily concluded defendant "willfully neglected or violated a duty." The court, however, did not support its conclusion. Nor do the facts support a finding defendant knew the proper procedure to stay sentences pending appeal, and despite this knowledge advised his client to disobey a lawful court order.

The record demonstrates defendant was genuinely confused about the proper motion required to stay a sentence pending appeal:

MR. LONG: Rule 4 says all appeals in criminal cases shall be taken within thirty days. And then it says, if a motion for a new trial is made within thirty days after a notice of the denial of the motion is given, and we filed a motion for a new trial on the 19th, the day he was supposed to start serving the sentence, which is within the ten-day limit, and that's the same day we filed the Notice of Appeal. The person who does my appeal briefs said we did not even have to file a Notice of Appeal until thirty days after the denial of our Motion for New Trial; but in order to stay execution of sentence, we decided we better file a Notice of Appeal. Subsequently, the Court of Appeals has sent a notice that we had a docketing statement due within ten days.

THE COURT: No. No, no you're misunderstanding the rules. Once a judge orders that someone does something, that person does it, or should [do] it, unless the judge issues a certificate of probable cause, or any way grants a motion to modify in the case. Just filing a notice of appeal or a request for a new trial does not in any way stop what a judge has ordered. There's some certificate of probable cause language there, have you read that?

. . . .

MR. LONG: Well, the reason we filed the notice of appeal in spite of the advice we received is because I—I saw no other way under the rule to file a motion for a certificate of probable cause and a motion to stay the execution of the sentence pending appeal. And I—somehow, I can't imagine the legislature foreseeing that someone could be—have a trial, be convicted and have a—be sentenced to serve something and pay a fine, and then have their rule just not say anything about how you stay the execution of the sentence pending appeal; so you know, I'm confused, as well as, I guess Mr. Saxton and my legal assistant, about this.

The State did not rebut defendant's testimony. At most, the record demonstrates defendant learned the proper procedure

about a week after he misinformed his client and filed the inappropriate documents, when he ultimately filed a motion for certificate of probable cause. If the State had produced evidence demonstrating defendant had followed proper sentence-staying procedures in previous cases, such circumstantial evidence would have supported an inference defendant knew how to stay sentences at the time he filed the wrong motions and thus knew he was advising his client to disobey a lawful court order. The evidence in the record, however, merely demonstrates defendant made a negligent mistake by informing his client not to report to jail.

We conclude there is insufficient evidence to support a finding defendant willfully neglected or violated his duty as an attorney. The trial court's finding to the contrary is, therefore, clearly erroneous. Consequently, we vacate defendant's conviction of criminal contempt under section 78–32–1(3).

## CONCLUSION

We conclude the affidavit filed against defendant sufficiently notified him of the criminal contempt charges because it set out the acts done or omitted by defendant that formed the factual basis for the charge. In addition, we conclude that defendant's unethical conduct supports a criminal contempt conviction for "violation of duty by an attorney" under section 78–32–1(3) because the ethical violation also infringed on the court's integrity. Also, we find insufficient evidence to support a finding defendant acted willfully within the meaning of section 78–32–1(3). Accordingly, defendant's indirect criminal contempt conviction under section 78–32–1(3) is vacated. Finally, we also vacate defendant's conviction under section 78–32–1(5) because at oral argument the State conceded the facts will not support a contempt conviction under that subsection.

GREENWOOD and ORME, JJ., concur.