**STATE of Utah, Plaintiff and Appellant,**

**v.**

**Joseph C. MIRQUET, Defendant and Appellee.**

**No. 920066–CA.**

Court of Appeals of Utah.

Dec. 30, 1992.

R. Paul Van Dam and David B. Thompson, Salt Lake City, for appellant.

Milton T. Harmon, Nephi, for appellee.

Before BENCH, BILLINGS and ORME, JJ.

## OPINION

BILLINGS, Associate Presiding Judge:

The State of Utah appeals the trial court's grant of defendant's motion to suppress evidence. The trial court granted the motion based on the State's failure to provide the constitutional protections required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We affirm.

## FACTS

On November 25, 1989, defendant was driving south on Interstate 15 in his 1978 Cadillac. Officer Paul Mangelson of the Utah Highway Patrol was operating a radar speed check near Nephi. He clocked defendant's speed at 76 m.p.h. in a 65 m.p.h. zone. Officer Mangelson pulled defendant over, obtained his license and registration, asked him to enter the patrol car to see the speed recorded on the radar unit, and proceeded to write him a speeding ticket.

While defendant was in the patrol car, Officer Mangelson detected the odor of burnt marijuana. Officer Mangelson testified that he said to defendant "It's obvious to me that you've been smoking marijuana. Do you care to go get the marijuana for me, or do you want me to find it?" Officer Mangelson later testified he said "It's obvious to me you've been smoking marijuana. You know, there's no question in my mind, Would you like to go to the car and get the marijuana, or do you want me to go get it?" In response, defendant went to his car and returned to the patrol vehicle with a cigarette package containing two rolled "joints." Officer Mangelson then searched defendant's car. In the car's main compartment, he found a film canister with a small amount of marijuana, a pipe, and a vial that held cocaine. Officer Mangelson then searched the trunk and found a cardboard box with four or five ounces of marijuana vacuum packed in bags.

Defendant was subsequently charged with two felonies, possession of cocaine and possession of marijuana with intent to distribute. He filed a motion to suppress the evidence seized in the search of the vehicle. The trial court found defendant was in custody at the time he was told to retrieve the marijuana and, consequently, entitled to *Miranda* protections. Accordingly, the court ordered the incriminating evidence suppressed.

The State filed an interlocutory appeal which we granted. In this first appeal, we vacated the order of suppression and remanded the case for re-consideration in light of *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), and our intervening decision, *State v. Sampson*, 808 P.2d 1100 (Utah App.1990).

On remand, the trial court determined "the officer accused the defendant of smoking marijuana," "a reasonable person would probably not feel free to leave under the circumstances," and therefore concluded "the officer's post custodial statements amounted to an illegal interrogation." Consequently, the court again suppressed the evidence.

Arguing the trial court on remand applied the wrong legal standard in concluding defendant was in custody and, therefore, entitled to *Miranda* warnings, the State again appeals. The State also argues that even if there was a *Miranda* violation any derivative physical evidence should be admissible unless it was recovered through the use of actual coercion.

## I. CUSTODIAL INTERROGATION

■ The State asserts the trial court applied an incorrect legal standard in determining defendant was in custody for the purposes of *Miranda*. We review a trial court's legal conclusions for correctness. *Stewart v. State ex rel. Deland*, 830 P.2d 306, 309 (Utah App.1992). Parsing the language of the trial court's Findings of Fact and Conclusions of Law, the State claims the trial judge decided defendant was in custody because the court concluded a reasonable person would believe he was not free to leave if in defendant's situation.

The State argues the result might be different if the trial court had applied the proper standard—that defendant had a reasonable belief his freedom of action was curtailed to the degree associated with formal arrest. *See State v. East*, 743 P.2d 1211, 1212 (Utah 1987).

■ As a matter of federal law, an individual's right to the protections afforded in *Miranda* are triggered the moment the individual is subject to "custodial interrogation." The United States Supreme Court defines custodial interrogation as

"questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612[, 16 L.Ed.2d 694] (1966). The Court expanded on this definition in *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711[, 50 L.Ed.2d 714] (1977) (per curiam). "*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Id.* at 495, 97 S.Ct. at 714. Later, in *California v. Beheler*, 463 U.S. 1121, 103 S.Ct. 3517[, 77 L.Ed.2d 1275] (1983) (per curiam), the Court stated that "the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with formal arrest." *Id.* at 1125, 103 S.Ct. at 3520.

*State v. Sampson*, 808 P.2d 1100, 1104 (Utah App.1990). The question of custody is judged by an objective standard. "[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984).

■ Utah courts have refined the analysis of when a person is in custody for *Miranda* purposes. The Utah Supreme Court, in *Salt Lake City v. Carner*, 664 P.2d 1168 (Utah 1983), adopted the widely held rule that a "temporary detention for the purpose of investigating alleged traffic violations" is not a custodial interrogation. *Id.* at 1170. The court also stated that it is

"at the point the environment becomes custodial or accusatory, a police officer's questions must be prefaced with a *Miranda* warning." *Id.* In *Carner*, the court articulated four factors to consider in determining whether a defendant is in custody for the purposes of *Miranda*. "They are: (1) the site of the interrogation; (2) whether the investigation focused on the accused; (3) whether the objective indicia of arrest were present; and (4) the length and form of interrogation." *Id.* at 1171.[1]

In *State v. Kelly*, 718 P.2d 385 (Utah 1986), the supreme court identified another consideration that should be weighed when assessing the question of custody—the presence of a "coercive or compulsive strategy on the officer's part" in conducting the interrogation. *Id.* at 391. Because of the reasonable man standard articulated in *Berkemer*, coercive intent should be considered as part of the form of interrogation factor. In other words, it is the manifestation of the coercive strategy that matters, not the unarticulated or unobserved intent of the officer. *Cf. Berkemer*, 468 U.S. at 442, 104 S.Ct. at 3151.

This court further developed the *Miranda* custody analysis in *State v. Sampson*, 808 P.2d 1100 (Utah App.1990). In addition to the four factors set forth in *Carner* and developed in *Kelly*, we recognized a fifth factor: "whether the defendant came to the place of interrogation freely and willingly." *Id.* at 1105. In *Sampson*, we concentrated on the fourth factor—the form of interrogation. We concluded that Utah courts place "a great deal of emphasis on the form of the questioning" in assessing whether the defendant is in custody. *Id.* If questioning is "merely investigatory, courts have not found custody." *Id.* (citing *Kelly*, 718 P.2d at 391). However, the moment the questioning becomes accusatory "custody is likely and *Miranda* warnings become necessary." *Id.* (citing *Carner*, 664 P.2d at 1170; *Kelly*, 718 P.2d at 391). The court identified the change from investigatory to accusatory questioning as happening when the " 'police have reasonable grounds to believe that a crime has been committed and also reasonable grounds to believe that the defendant has committed it.' " *Id.* 808 P.2d at 1106 (quoting *Carner*, 664 P.2d at 1171).

■ Our review of the case law convinces us, as contended by the State, the proper inquiry as to whether a defendant is in custody for the purposes of *Miranda* is whether a reasonable person in defendant's position would believe his "freedom of action is curtailed to a degree associated with a formal arrest." *East*, 743 P.2d at 1212. However, we do not believe the trial court departed from that standard in this case. We are persuaded the trial court applied the correct legal standard. Our previous remand contained specific directions to determine the custody issue under the standard advanced by the State. We directed the trial court to reconsider its prior ruling in light of *Berkemer*. That case holds it "settled that the safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a

---

1. We disagree with the dissent that *Carner's* persuasiveness has somehow been diminished by *Berkemer*. *Carner* sets out factors that are important for trial judges to consider in reaching the ultimate conclusion of whether a reasonable person would believe his freedom of action was curtailed to the degree associated with formal arrest. Furthermore, in *California v. Beheler*, 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (per curiam), the Court explicitly recognized that the "circumstances of each case must certainly influence" the custody determination. *Beheler*, 463 U.S. at 1125, 103 S.Ct. at 3520. As the Court noted in *Berkemer*, the question answered by the custody determination is whether a "stop exerts upon a detained person pressures that sufficiently impair his free exercise of the privilege against self-incrimination." *Berkemer*, 468 U.S. at 437, 104 S.Ct. at 3149. The *Carner* factors provide a framework for answering that question in reference to the circumstances of each case.

In this vein, we note that *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (per curiam), which set forth the requirement that an individual be "in custody," was decided six years before *Carner*. Also, in *State v. East*, 743 P.2d 1211 (Utah 1987), decided years after *Berkemer*, our supreme court cites *Carner* with approval. Likewise, this court in *State v. Sampson*, 808 P.2d 1100 (Utah App. 1990), applied the *Carner* analysis. We believe *Carner's* precedential value remains undiminished.

'degree associated with formal arrest.'" *Berkemer*, 468 U.S. at 440, 104 S.Ct. at 3150 (quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam)). Furthermore, where, as here, the evidence is essentially undisputed and the undisputed facts support a determination that defendant was in custody, the mere failure to recite the precise words of the custody standard does not demand a remand for more specific findings. *See, e.g., Flying Diamond Oil v. Newton Sheep Co.*, 776 P.2d 618, 622 (Utah 1989) (holding remand unnecessary where undisputed facts allow appellate court to "fairly and properly resolve the case on the record"); *State v. Vincent*, 845 P.2d 254 at 259 n. 8 (Utah App.1992) (reversing trial court's ruling of indigency based on undisputed facts in the record); *State v. Lovegren*, 798 P.2d 767, 771 n. 10 (Utah App.1990) (upholding legality of stop despite lack of findings where undisputed facts showed clear statutory violation).

Applying the factors Utah case law has focused upon to determine custody to the undisputed facts in the record supports the trial court's determination that defendant was in custody.

Focusing on the first factor, the site of the interrogation, defendant was questioned in a police car. This does not lead to a conclusion of custody as readily as a station house interrogation. It is not, however, as free of compulsion as questioning on a sidewalk or outside of the police car. The location of the stop also bears on this element. The defendant was pulled over alongside an interstate highway in rural Utah. He was thus subject to a more police dominated setting than a citizen pulled over in an urban area where passing motorists are going slower and pedestrians are present. Thus, while not conclusive, this factor points toward custody.

The second factor of whether the investigation focused on defendant also supports a conclusion of custody. Clearly, Officer Mangelson's investigation focused solely on defendant.

The third factor, whether the objective indicia of arrest were present, neither compels a determination of custody nor is completely devoid of some indications of custody. Granted there were no "readied handcuffs, locked doors or drawn guns," *Carner*, 664 P.2d at 1171, yet defendant was isolated in a patrol vehicle with an officer accusing him of a crime. One element of any arrest is going to be such an accusation. Another objective indication of arrest can be found in the trial court's finding that, under the circumstances, a reasonable person would not have felt free to leave. The dissent argues that allowing the defendant to make an unaccompanied trip to his car to retrieve the marijuana is a fact which supports a conclusion that defendant was not in custody. However, the proximity of the cars, the officer's opportunity to maintain constant surveillance, and the limited time period, all limit the significance of this fact.[2]

The fourth factor, the length and form of the interrogation, including evidence of the officer's coercive intent, is the most significant factor bearing on this case. The Utah Supreme Court has noted that accusatory questioning by a police officer requires *Miranda* warnings. *Id.* at 1170. The court

---

**2.** The dissent takes us to task for this list of relevant facts. These facts are merely reasonable inferences from undisputed facts in the record. As our supreme court has stated: "Perhaps the most basic principle of appellate review is that we must view the evidence *and the reasonable inferences to be drawn therefrom* in the light most favorable to sustaining the trial court's decision." *Bagnall v. Suburbia Land Co.*, 579 P.2d 914, 916 (Utah 1978) (emphasis added).

At the suppression hearing Officer Mangelson was the only witness. He testified that he pulled Mirquet's vehicle over "by use of a red light," "approached the driver's side," and "invit-ed him back to my patrol car." After being accused of drug use, defendant "went to his car and came back with a package of Carlton cigarettes." Officer Mangelson also testified that when he decided to search the car, Mirquet first "went up" to the car to leash a dog. We believe it is eminently reasonable to infer from this testimony that the cars were close, the officer's car was behind Mirquet's car giving the officer the opportunity to observe the defendant, and the events happened in a short period of time. In fact, the inferences we draw are probably reasonable in all routine traffic stops.

has also noted the significance of a coercive strategy in the officer's questioning as an important consideration. *Kelly*, 718 P.2d at 391. We have likewise recognized the crucial significance of accusatory questioning.[3] *Sampson*, 808 P.2d at 1105–06.

In the patrol car, Officer Mangelson said to defendant, "It's obvious to me that you've been smoking marijuana. Do you care to go get the marijuana for me, or do you want me to find it?" This question is clearly an accusation of criminal activity. At the suppression hearing, Officer Mangelson testified that the moment he detected the aroma of marijuana there was no question in his mind whatsoever that the defendant had been smoking marijuana. At this point Officer Mangelson had reasonable grounds to believe both a crime had been committed and defendant had committed the crime. The questioning that followed was an attempt to get evidence to support that conclusion. The form of Officer Mangelson's question was not only likely to elicit an incriminating response, it precluded any nonincriminating response. This question manifested Officer Mangelson's coercive intent. Therefore, the fourth factor strongly supports the trial court's determination of custody.

Finally, the fifth factor of freely coming to the place of interrogation provides some support for the trial court's conclusion. It would be the rare individual stopped for speeding who could be said to be there freely or willingly.

In summary, the evidence relevant to factors (1), (2), (3), and (5) does not compel a conclusion of custody. To varying degrees, however, each provides some indication of custody. Those factors combined with the accusatory nature of the questioning, the coercive intent of Officer Mangelson, and the likelihood that his question would elicit an incriminating response, lead us to agree with the trial court that a conclusion of custody is inescapable. The established facts in this case allow no conclusion except that a reasonable person in defendant's situation would believe his freedom of action was curtailed to the extent associated with formal arrest.

Furthermore, the trial court's memorandum decision following the second suppression hearing indicates the State's basic theory is based on a misreading of the decision.[4] The State argues the court decided defendant was in custody solely because a reasonable person would not feel free to leave. The opening paragraph of the memorandum decision provides: "The Court finds the defendant was in custody for the purposes of *Miranda v. Arizona*, 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966) and that it would appear to the reasonable individual that he would be in custody under the circumstances of this case." The use of "and" indicates the custody determination for *Miranda* purposes was separate from the finding that a reasonable person would not feel free to leave. Even more explicitly, the memorandum decision later states: "The Court finds that because the officer accused the defendant of smoking

---

**3.** The dissent argues that because the questioning in *Berkemer* and *Beheler* was "accusatory," and the Court found the defendants in those cases were not in custody, we cannot rely on this factor. However, *Berkemer* only indicates the officer "asked respondent whether he had been using intoxicants." *Berkemer*, 468 U.S. at 423, 104 S.Ct. at 3141. This is neither accusatory nor unduly coercive. Likewise, in *Beheler*, the nature of the questioning is alluded to in passing in the "facts" portion of the opinion and ignored during the Court's cursory analysis. The dissent places too much emphasis on such superficial references.

**4.** We are puzzled by the dissent's reluctance to utilize the entire record before us. The dissent limits itself to a review of the trial courts findings of fact and conclusions of law. It refuses to accord any value to the trial court's memorandum decision. We note that the findings were drafted by defense counsel whereas the memorandum decision was authored by the judge. We therefore find it more instructive as to the court's *reasoning*.

The dissent's reliance on *State v. Rio Vista Oil, Ltd.*, 786 P.2d 1343 (Utah 1990), to justify the blind eye it turns to the memorandum decision is misplaced. The question in *Rio Vista* was whether the court had reached a decision on an issue when there was a direct conflict between the findings and the memorandum decision. *See id.* at 1347. Here, we are concerned with the court's analytical process, thus use of the entire record is appropriate.

marijuana, and the officer's sworn testimony that a reasonable person would probably not feel free to leave under the circumstances, 'that the Defendant would be considered in custody at the point of the accusation."

Thus, the custody conclusion is explicitly based on two facts, the officer's accusatory questioning and the perception by defendant that he was not free to leave. Reading the above two passages together indicates the "free to leave" determination is essentially a supplemental finding which supports the court's ultimate conclusion of custody.

■ In sum, we agree with the trial court that defendant was in custody and Officer Mangelson had the obligation to provide him the appropriate *Miranda* warnings.[5] We, therefore, affirm the trial court's ruling that defendant's *Miranda* rights were violated.

## II. SUPPRESSION OF EVIDENCE

■ The State argues that regardless of any *Miranda* violation the derivative physical evidence should be admitted unless the defendant was subject to actual coercion. *See, e.g., United States v. Gonzalez–Sandoval,* 894 F.2d 1043 (9th Cir.1990); *State v. Dellorfano,* 128 N.H. 628, 517 A.2d 1163 (1968); *State v. Wethered,* 110 Wash.2d 466, 755 P.2d 797 (1988); *but see United States ex rel. Argo v. Platt,* 673 F.Supp. 282 (N.D.Ill.1987). However, the record indicates this argument is made for the first time on appeal.

"As a general rule, we will not review a claim on appeal unless 'a contemporaneous objection or some form of *specific* preser-

vation of claims of error' has been made a part of the record" during the proceedings before the trial court. *State v. Scheel,* 823 P.2d 470, 473 (Utah App.1991) (quoting *State v. Johnson,* 774 P.2d 1141, 1144 (Utah 1989)). Accordingly, we do not reach the question of the appropriate remedy for the *Miranda* violation because the State did not provide the trial court the opportunity to address the issue.[6]

## CONCLUSION

Because the undisputed facts and the findings of the trial court support its conclusion that defendant's *Miranda* rights were violated, we affirm the trial court's ruling. Further, because the State did not raise the issue of the appropriate remedy for the *Miranda* violation at trial, we do not consider this issue on appeal. We therefore affirm the suppression order.

ORME, J., concurs.

BENCH, Presiding Judge (dissenting):

I respectfully dissent. I would reverse the order of the trial court and remand the case for entry of necessary factual findings under the proper legal standard.

The trial court has never applied the legal standard set forth in *Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984), as previously directed by this court in an unpublished opinion. *See State v. Mirquet,* No. 900402–CA, slip op. (Oct. 26, 1990). On remand, the trial court followed *Salt Lake City v. Carner,* 664 P.2d 1168 (Utah 1983), a pre-*Berkemer,* state-court, interpretation of the federal constitution.[1] *Carner* 's prece-

5. Fifth Amendment protections apply only to testimonial acts. *Baltimore City Dept. of Social Services v. Bouknight,* 493 U.S. 549, 110 S.Ct. 900, 107 L.Ed.2d 992 (1990). The State concedes that defendant's act of retrieving the marijuana was testimonial and the equivalent of an incriminating statement. *See id.; State v. Wethered,* 110 Wash.2d 466, 755 P.2d 797, 798–800 (1988).

6. *See State v. Quintana,* 826 P.2d 1068 (Utah App.1991) (passing reference by state in trial court insufficient to preserve issue of timeliness of withdrawal of guilty plea for court of ap-

peals); *see also State v. Archambeau,* 820 P.2d 920 (Utah App.1991) (constitutional claim will only be heard for first time on appeal if it presents plain error or exceptional circumstance).

1. The majority blithely assumes that the trial court actually applied *Berkemer* simply because it was directed to in our previous remand. Such an assumption is totally unsupported by the trial court's findings of fact and conclusions of law. The trial court did not merely fail to "recite the precise words of the custody standard," as asserted by the majority; the trial

dential value has been greatly diminished by the United States Supreme Court's subsequent decisions applying a different standard. There is a distinct difference between custody determinations under *Carner* and custody determinations under *Berkemer*. Under *Carner*, a *Miranda* warning was necessary if "the environment becomes custodial *or* accusatory." *Carner*, 664 P.2d at 1170 (emphasis added). In *Berkemer*, on the other hand, the Supreme Court focused not on the nature of the questioning, but on whether the defendant's freedom was restricted. 468 U.S. at 441–42, 104 S.Ct. at 3151; *see also* 1 W. LaFave & J. Israel, *Criminal Procedure*, § 6.6(c) (Supp.1991).

*Berkemer* is supported by, and consistent with, other Supreme Court decisions which hold that the accusatory nature of police questioning does not alone create the need for a *Miranda* warning. In *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), the defendant was contacted by the police and asked to come to the police station, which he did. He was then informed that he was suspected of committing a burglary. The police continued interviewing the defendant without giving him a *Miranda* warning. The defendant then admitted his participation in the burglary. Following his admission, the defendant was given a *Miranda* warning and his confession was recorded by the police. The defendant was then allowed to leave, pending the District Attorney's decision to bring formal charges. Oregon's supreme court had ruled that a *Miranda* warning was necessary when the police first informed the defendant that he was suspected of committing a burglary. In summarily reversing the Oregon Supreme Court, the United States Supreme Court stated: "Such a noncustodial situation is not converted to one in which *Miranda*

applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a 'coercive environment.' " *Mathiason*, 429 U.S. at 495, 97 S.Ct. at 714. The Supreme Court subsequently noted in *California v. Beheler*, 463 U.S. 1121, 1124, 103 S.Ct. 3517, 3519, 77 L.Ed.2d 1275 (1983), that its *Mathiason* "holding relied on the very practical recognition that '[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime.' " *Id.* (quoting *Mathiason*, 429 U.S. at 495, 97 S.Ct. at 714).

In *Beheler*, the defendant had told the police about his tangential involvement in a murder. He subsequently went to the police station to be interviewed and was not given a *Miranda* warning. He was then allowed to return home. He was subsequently arrested for aiding and abetting, at which time he was given his first *Miranda* warning. The California Court of Appeals had reversed the defendant's conviction because he was not given a *Miranda* warning when he was clearly a suspect at the time of the interview and "the interview was designed to produce incriminating responses." *Id.*, 463 U.S. at 1123, 103 S.Ct. at 3519. The Supreme Court reversed the California court's reversal because the "ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest," not the accusatory nature of the questioning. 463 U.S. at 1125, 103 S.Ct. at 3520 (quoting *Mathiason*, 429 U.S. at 495, 97 S.Ct. at 714).

court totally failed to recognize or apply the proper standard to any degree. The trial court's order only mentions *Berkemer* in passing for the general proposition that traffic stops do not constitute custody for *Miranda* purposes. There is no indication that the trial court ever attempted to apply the *Berkemer* analysis as to when a traffic stop might evolve into a custody situation requiring a *Miranda* warning. The only sub-

stantive difference between the trial court's first order (which we reversed for not applying *Berkemer*) and the trial court's second order (following remand) is the incorporation and application of *Carner*. I therefore do not share the majority's view that the trial court actually applied the legal standard set forth by the Supreme Court in *Berkemer*.

In *Berkemer*, 468 U.S. 420, 104 S.Ct. 3138, the police officer pulled over a motorist after he noticed the motorist was driving erratically. The officer observed that when the motorist exited his car he was having difficulty standing. At that time, the officer decided that the motorist would not be allowed to leave. The officer did not, however, tell the motorist that he would be taken into custody. The officer then asked the motorist to perform a field sobriety test. The motorist could not perform the test. Without any *Miranda* warning, the officer then asked the motorist whether he had been using intoxicants. The motorist responded that "he had consumed two beers and had smoked several joints of marijuana a short time before." 468 U.S. at 423, 104 S.Ct. at 3141. The officer thereupon placed the motorist under formal arrest and transported him to jail. At the jail, the motorist was further interviewed without the benefit of a *Miranda* warning. The Supreme Court held that the responses at the jail should be suppressed for lack of a *Miranda* warning, but that the roadside responses were admissible. The Supreme Court recognized that all persons detained during an investigation of a traffic violation have their freedom significantly restrained, and that it is unlikely that a person in such a situation would ever feel free to leave. The Supreme Court also acknowledged that "[i]t is settled that the safeguards prescribed by *Miranda* become applicable as soon as the suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" 468 U.S. at 440, 104 S.Ct. at 3150 (quoting *Beheler*, 463 U.S. at 1125, 103 S.Ct. at 3520). It then concluded

that persons restrained during traffic stops are not entitled to a *Miranda* warning unless they are "subjected to treatment that renders [them] 'in custody' for practical purposes." *Id.* (citing *Mathiason*, 429 U.S. at 495, 97 S.Ct. at 714). The Supreme Court held that despite the accusatory nature of the officer's questioning, no *Miranda* warning was necessary because there was no showing that the treatment of the motorist was "the functional equivalent of formal arrest." *Id.* See also *Pennsylvania v. Bruder*, 488 U.S. 9, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988).

In light of the Supreme Court's holdings in *Berkemer*, *Beheler*, and *Mathiason*, the trial court's reliance on the *Carner* analysis—with its overriding emphasis on the accusatory nature of the questioning—is clearly contrary to current governing federal constitutional law. Since *Carner*, the Utah Supreme Court has twice applied *Berkemer* in traffic stop cases. In both cases, it held that the drivers' freedoms were not curtailed to the degree of a formal arrest, even though the officers questioned the drivers about drinking alcohol after smelling alcohol on their breath (an admittedly accusatory question), and ordered the drivers to perform field sobriety tests (a potentially inculpatory act). No *Miranda* warnings were therefore required. *See Salt Lake City v. Womack*, 747 P.2d 1039, 1042 (Utah 1987); *State v. East*, 743 P.2d 1211, 1212 (Utah 1987).[2] I do not see any material distinction between the conduct of the officer in the present case and the officers' actions in *Womack* and *East* that justifies the majority's departure from the supreme court's rulings in those cases.[3]

---

2. In *East*, the supreme court only cited *Carner* in passing, as part of a string cite, without any discussion. *See East*, 743 P.2d at 1212. In *Womack*, the supreme court did not even cite *Carner* when discussing the need for a *Miranda* warning. *See Womack*, 747 P.2d at 1042. Inasmuch as the supreme court itself no longer seems to follow the *Carner* analysis when *Berkemer* applies, *Carner*'s precedential value in this case seems minimal. To the extent *State v. Sampson*, 808 P.2d 1100 (Utah App.1990), relied on the accusatory prong of *Carner*, rather than the custodial prong expressly adopted in *Berkemer*, it is inconsistent with federal law.

3. The majority's reliance on the form of questioning is also directly at odds with *Berkemer*. The majority justifies its decision because the officer clearly had reasonable suspicion that the defendant had committed a crime, and the questioning was an attempt "to get evidence to support that conclusion." See majority opinion page 1000. The officer in *Berkemer* likewise had a reasonable suspicion that the motorist had committed a crime, and likewise questioned the motorist to get evidence in support of that suspicion. Furthermore, the accusatory questioning in *Berkemer* was held not to have revealed a coercive intent. The majority in this case, however, without distinguishing *Berkemer*,

Inasmuch as the trial court identified and applied an incorrect legal standard, it has never answered the correct inquiry: Was defendant, at any time between the initial traffic stop and his formal arrest, subjected to treatment that could "fairly be characterized as the functional equivalent of formal arrest." *Berkemer*, 468 U.S. at 442, 104 S.Ct. at 3151.

In *United States v. Streifel*, 781 F.2d 953 (1st Cir.1986), the trial court was required to determine whether the defendants were in custody for *Miranda* purposes. The trial court, like the trial court in this case, focused on whether a reasonable person would have felt free to leave, not on the *Berkemer* test of whether the "suspect's freedom of action [was] curtailed to a '*degree associated with formal arrest.*'" *Id.* 781 F.2d at 961 (quoting *Berkemer*, 104 S.Ct. at 3151 (quoting *Beheler*, 463 U.S. at 1125, 103 S.Ct. at 3519–20)). The appellate court held that the trial court erroneously treated it's finding that the suspects did not feel "free to leave" as "largely dispositive" of the custody issue. *Streifel*, 781 F.2d at 961. The *Streifel* court noted that the Supreme Court made clear in *Berkemer* that

> whether "a reasonable person . . . would have believed he was not free to leave," . . . is the standard for determining whether a person has been seized within the meaning of the fourth amendment, but is not alone determinative of whether he has been placed in custody for the purposes of the fifth.

*Id.* 781 F.2d at 960 (citations omitted). The trial court's finding that defendants were in custody for *Miranda* purposes because they did not feel free to leave was therefore inadequate to support the finding of

custody under the *Berkemer* test. One of the critical findings missing was "precisely when, if ever, prior to defendant's formal arrest, a custodial situation requiring *Miranda* warnings arose." *Id.* at 962.

The *Streifel* court held that due to the lack of adequate findings relating to the *Berkemer* test, the suppression order needed to be vacated and remanded for further findings. The court reasoned that the trial court "is in the best position to sort out the record and make the additional necessary findings conforming to the case law. . . ." *Id.* The court further reasoned that "a court of appeals is ill-equipped to undertake its own de novo assessment of the facts against the proper standard." *Id.* The court "express[ed] no view on the ultimate disposition of the defendant's motion to suppress, because this necessarily involves fact-specific assessments and inquiries which the district court is in the best position to make." *Id.*

In the present case, it is clear that the trial court's ruling that a *Miranda* warning was needed prior to defendant's formal arrest was based on whether defendant felt free to leave. It did not make any findings on the factors identified by the Supreme Court in *Berkemer*. 468 U.S. at 442, 104 S.Ct. at 3151.[4] As in *Streifel*, we have no finding by the trial court as to precisely when defendant's custody reached the degree of a formal arrest so as to require a *Miranda* warning. *Berkemer* makes it clear that a mere finding that reasonable persons would not consider themselves free to leave does not invoke *Miranda*. *Streifel*, 781 F.2d at 961 (whether *Miranda* warning was required "could not be resolved simply by inquiring whether or not a reasonable person in the defendant['s] posi-

holds that the officer's accusatory questioning was coercive.

**4.** Contrary to the representations of the majority, the trial court also did not find that "the defendant was in custody for purposes of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that it would appear to the reasonable individual that he would be in custody under the circumstances of this case." No such statement appears anywhere in the trial court's findings of fact and conclusions of law. The majority resorts to the trial court's memorandum decision for this finding—contrary to

the rule that unless the signed written findings and conclusions of the trial court are challenged as not representing the trial court's view, "[w]e must assume that he found them satisfactory in all particulars." *State v. Rio Vista Oil, Ltd.*, 786 P.2d 1343, 1347 (Utah 1990) (findings and conclusions governed even though they reached an issue the trial court expressly stated it was not reaching in its memorandum decision). It is, after all, the trial court's final decision that we are called upon to review, not the memorandum decision. The majority's reliance on the memorandum decision is therefore improper.

tion would have felt free to leave"). The only other finding made by the trial court is that the officer accused defendant of committing a crime. As discussed above, the existence of an accusatory environment, standing alone, is insufficient to require a *Miranda* warning.[5]

The lack of adequate findings under the *Berkemer* standard is not harmless as asserted by the majority. The record suggests to me that defendant's freedom was not curtailed to the degree of a formal arrest. I doubt that after a "formal arrest," a police officer would allow a suspect the freedom to get out of the police car and return alone to his own car. Such freedom seems totally inconsistent with a formal arrest since it would create an obvious opportunity for the suspect to obtain a weapon or to escape. Since the majority disagrees, it is clearly debatable whether or not this defendant's freedom was sufficiently curtailed under the standard set forth in *Berkemer*. Since the record "admits of conflicting interpretations," *Streifel*, 781 F.2d at 962, the question is best left to the discretion of the trial court to apply its judgment in view of its advantaged front-line position. *Id.*[6] The trial court, however, never determined whether defendant's detainment prior to his formal arrest was "the functional equivalent of formal arrest." *Berkemer*, 468 U.S. at 442, 104 S.Ct. at 3151.

Despite the trial court's failure to apply the correct legal standard and make the necessary findings, the majority affirms by stepping into the role of the trial court and making the missing findings for it. In attempting to apply the correct legal standard for the first time on appeal, the majority unabashedly makes its own subsidiary and ultimate factual findings that were never made by the trial court.[7] This is not the proper role of an appellate court. Our duty is to review the findings actually made by the trial court, not to make our own findings. In effect, the majority is sitting as both the trial court and the appellate court by making its own findings and then affirming them.

In order to preserve the integrity of our judicial system, this matter should be remanded to the trial court. The trial court may then make its own factual findings under the correct legal standard—a task it has yet to perform.

**5.** When we initially remanded this matter, there was a concurring opinion implying that the relevant question on remand was whether defendant felt free to leave once the officer accused him of smoking marijuana. While this concurring opinion did not represent the opinion of a majority of that panel, it helps explain why the trial court once again erroneously based its decision on an incorrect legal standard.

**6.** If a legal standard is flexible enough to allow two different factfinders to interpret the same evidence and reach different results, the trial court is to decide the issue as a matter of fact. *State v. Richardson*, 843 P.2d 517 (Utah App. 1992) (Bench, P.J., concurring).

**7.** For example, the majority purportedly finds that defendant's freedom was restrained to the degree of a formal arrest even though defendant was allowed to leave the custody of the police. The majority claims this freedom was not significant because of "the proximity of the cars, the officer's opportunity to maintain constant surveillance, and the limited time period." See majority opinion at page 999. The trial court, however, did not make findings on any of these subsidiary facts. We do not know how far apart the cars were, whether the officer could or did maintain constant surveillance, or the time period defendant was free. In making its own subsidiary findings, the majority does not, and cannot, point to any evidence in the record as support therefor. Instead, the majority claims it may infer these facts. An inference, however, is

> a logical and reasonable conclusion of the existence of a fact in a case, not presented by direct evidence as to the existence of the fact itself, but inferred from the establishment of other facts from which by a process of logic and reason, based upon common experience, the existence of the assumed fact *may be concluded by the trier of fact.*

*State v. Brooks*, 631 P.2d 878, 881–82 (Utah 1981) (emphasis added). Given the paucity of underlying facts from which logical deductions may be made, the "inferences" drawn by the majority are little more than unsubstantiated "speculations" or "assumptions" as to what actually occurred and the amount of freedom defendant in fact had. Furthermore, since this court is clearly not the "trier of fact," it is improper for the majority to be drawing *any* inferences. Remand is therefore required.