**Ernest W. KUNZLER, Plaintiff, Appellee, and Cross–Appellant,**

v.

**Pauline H. O'DELL aka Pauline H. Moen; David L. Forsgren; Richard M. Forsgren; Michael D. Forsgren; and Chris V. Forsgren, Defendants, Appellants, and Cross–Appellees.**

**No. 920640–CA.**

Court of Appeals of Utah.

June 18, 1993.

---

Jack Molgard (argued), Brigham City, for defendants, appellants, and cross-appellees.

Loren M. Lambert (argued), Todd S. Richardson, Richardson, Packard & Lam-

bert, Salt Lake City, for plaintiff, appellee, and cross-appellant.

Before BENCH, GARFF and JACKSON, JJ.

JACKSON, Judge:

Appellants appeal from two post-judgment orders pertaining to the size and burden of a prescriptive easement across their land and the court's restraining order concerning both parties use of firearms near the easement. Appellee cross-appeals from an order finding him in contempt of court and further restricting his use of the easement. We affirm in part, and reverse in part.

## FACTS

Appellants and appellee own adjacent farm acreage located in rural Box Elder County. Appellee's property bordered appellants' property on the east and south. A cement ditch ran south along the eastern boundary of appellants' property and continued south through appellee's property, bisecting it. Appellee's cattle could not cross the ditch. On the east end of appellants' property was a small roadway, just west of the ditch, running north and south. A fence separated the roadway from the rest of the appellants' property. At a point along this roadway near the northeast corner of appellants' property was a bridge crossing the ditch. The roadway was used by appellee for ingress and egress of farm equipment and, together with the bridge, provided appellee's cattle with access to their water supply on the opposite side of the ditch. At the time of the events leading to this lawsuit, appellee had been using the roadway for more than twenty years.

In 1989, appellants removed the fence separating the roadway from the rest of their property. Appellee brought suit claiming he owned the roadway, or had a prescriptive easement. Before the trial began, appellee rebuilt a temporary fence in the area of the original fence. In May 1991, a hearing was held, at which time the trial court ruled that the historical placement of the easement was from the quar-

ter-section line (the boundary on the east) to the fence line, where it existed at the time of the trial. On July 1, 1991, the trial court entered a Judgment and Order awarding appellee a prescriptive easement over the east end of appellant's property for specific limited uses. The trial court described the easement boundary as running north and south along the quarter-section line and extending sixteen feet onto the appellants' property. Based on their interpretation of the Judgment, appellants moved the fence that appellee had rebuilt a few feet to the east, narrowing the width of the roadway to approximately sixteen feet. This prompted appellee to file a Motion for "Clarification of the Judgment," effectively informing the court that its description of the historical location of the fence line contained in the judgment was inconsistent with its legal ruling. In written response to this motion, the appellants joined in appellee's request for clarification stating that the fence that appellee had rebuilt was further than sixteen feet from the quarter-section line. A hearing was held on September 9, 1991, and a new judgment was entered January 10, 1992. The trial court explained the reason the description in its judgment was different from its legal ruling was because the court relied on representations made by both parties that the quarter-section line was sixteen feet to the east of the original fence line. The court invited either party to get a survey done to better describe the historical fence line and reaffirmed its ruling that the easement extended from the fence line, as it existed at the time of the trial (the historical location), to the quarter-section line, whatever that distance may be.

The remainder of the hearing was devoted to the presentation of testimony describing both parties' inability to follow the court's order. The evidence revealed both parties made various attempts to aggravate and annoy each other. There were allegations of threatening phone calls and actual physical confrontations at different times along the easement. The trial court reprimanded all the parties for their childish behavior and held appellee and two appellants in contempt. The court sus-

pended the contempt orders conditional upon the parties performing certain actions and generally behaving themselves.

On January 29, 1992, the parties were again before the court on an Order To Show Cause. At this hearing, the court discussed all the conditions the court had imposed on the parties at the clarification hearing. The court found generally that the appellants were striving to follow the court's orders and that appellee was not. The court found appellee in contempt of court and ordered that he spend five days in jail and pay the appellants' court costs and attorney fees. The court further ordered that appellee keep the access gates to the easement closed unless he was present. The following day, in a three-way conference call among the trial judge and the parties' attorneys, the court partially rescinded its order, allowing appellee to keep the gate open if his cattle were nearby.

## ISSUES

Appellants claim the trial court abused its discretion when it used a post-judgment order to change the description and use of the easement without receiving a motion from either party. Appellants also claim the trial court abused its discretion when it issued a permanent injunction limiting both parties' use of firearms near the disputed easement boundary. Appellee cross-appeals from the trial court's ruling that appellee was in contempt of court and from its ruling limiting appellee's use of the easement.

## ANALYSIS

### Post–Judgment Orders

Appellants argue only two rules of civil procedure, Rules 59 and 60, which enable a party to obtain relief from a judgment that is inconsistent with the court's intended ruling or that is in some other way improper. Appellants argue that under these rules, the trial court's January 10, 1992

judgment, which changed the description of the easement contained in the original judgment, could only have been proper if the action had been preceded by a motion. Appellants assert no motion was filed under either of these rules. Thus, appellants claim procedural error.

We disagree. Appellee filed a motion to obtain relief from the incorrect judgment and appellants joined in the motion requesting similar relief on their behalf. We hold that appellee's Motion to "Clarify" the trial court's original order allowed the trial court to change the deficient judgment under Utah Rule of Civil Procedure 60(b). Rule 60(b) provides, in pertinent part:

> On motion and upon such terms as are just, the court may in the furtherance of justice relieve a party ... from a final judgment, order, or proceeding for the following reasons ... (7) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time....

Utah R.Civ.P. 60(b).

The first issue we must address is whether a motion labeled "Request of Clarification" of the judgment is sufficient to invoke Rule 60(b) relief. The title of a motion is not dispositive as to whether a court can grant relief under the motion. *See Watkiss & Campbell v. Foa & Son,* 808 P.2d 1061, 1064 (Utah 1991) (the incorrect title on the pleading was not a bar to defendant's case); *Darrington v. Wade,* 812 P.2d 452, 457 (Utah App.1991) (the court did not elevate form over substance by refusing to allow a timely objection to a judgment invoking Rule 60(b) relief). Courts should give liberal construction to Rule 60(b). 7 James W. Moore, et al., *Moore's Federal Practice* ¶ 60.18[8], at 60–138 to –139 (2d ed. 1992) (footnote omitted).[1] Because "nomenclature is unimportant, moving papers that are mislabeled in other ways may be treated as motions under Rule 60(b) when relief would be proper under that rule." *Id.*

---

1. To the extent Utah Rules of Civil Procedure are similarly worded to the Federal Rules, federal rules and cases may be used to interpret

them. *First Sec. Bank v. Conlin,* 817 P.2d 298, 299 (Utah 1991).

In *Watkiss*, the defendant filed a "Motion for Reconsideration." 808 P.2d at 1063. The *Watkiss* court noted that the Utah Rules of Civil Procedure did not provide for any such motion. *Id.* at 1064. However, because the effect of the motion was essentially the same as an appropriate motion, the court allowed it. *Watkiss*, 808 P.2d at 1064. Likewise, in *Darrington*, because the parties objections to the judgment were the "functional equivalent," to a Rule 60(b) motion, the court used Rule 60(b) to vacate its judgment. *Darrington*, 812 P.2d at 457. When the substance of a mislabeled motion is in essence the same as a motion under Rule 60(b), courts can use the rule to grant relief.[2]

A Motion for "Clarification of Judgment" is not specifically provided for in the Utah Rules of Civil Procedure. However, the substance of the motion is to make clear a judgment that it is not already clear. If the clarity of the judgment is called into question because the opposing party is improperly applying the judgment, then implicit in the motion is a request to change the judgment to provide relief to a party harmed by the lack of clarity. Accordingly, we hold that in the case before us, appellees motion for clarification, in which appellants joined, was sufficient to invoke Rule 60(b).

■■■■ We must then decide whether the facts of this case allow the trial court to grant appellee relief under Rule 60(b). A court may grant relief under subsection seven of Rule 60(b) for any reason other than the first six enumerated by the rule if relief is justified, and the motion is made within a reasonable time. Utah R.Civ.P. 60(b); *Richins v. Delbert Chipman & Sons Co., Inc.*, 817 P.2d 382, 387 (Utah App. 1991).

Subsections one through six do not apply, and we believe a justifiable reason existed to grant relief. Further, the motion was timely made. The record clearly shows the court thought it was entering a judgment factually consistent with its legal ruling that the historical width of the ease-

ment was from the fence line as it existed at the time of the trial to the quarter-section line. It was not until the appellants surveyed the land and moved the fence line that the court or parties realized the judgment did not accurately memorialize the court's legal determination. At the clarification hearing, the trial court explained why it described the west boundary of the easement as being sixteen feet west of the quarter-section line in its original judgment. The court, without the benefit of a survey, relied on an erroneous exhibit that both parties testified from to conclude the quarter-section line was sixteen feet east of the fence line. The court acknowledged that this description was inconsistent with its legal ruling:

> The court has accepted the presentation by both parties that that is where the quarter section line was and that's where the fence line was and I have awarded a prescriptive easement from Mr. Kunzler's property on the east [the quarter-section line], wherever that may be, up to the fence line. That's the finding of the court.
>
> Now, if you have a survey since the trial of this case that shows that that isn't correct, then I would accept, on a proper motion, a modification describing by metes and bound where that is. But the easement that this court awarded goes up to that fence line and that is by prescription through use over a long period of time, more than 20 years.

The judge specifically found in its new judgment and order that the reason for the revision was "to make factually correct the description" and "to conform to the Court's ruling that the easement was from the West Boundary of the Plaintiff's property up to where the fence existed at the time of Trial" (the historical location). The court's factual description of its legal ruling was based on evidence submitted and relied on by both parties. That evidence was later found to be erroneous, making the factual description of the legal ruling incorrect. The legal ruling remained intact; the me-

---

**2.** We note that correcting its judgment is one manner of relief available the trial court. *See,*

*e.g., Baker v. Western Sur. Co.*, 757 P.2d 878, 881 (Utah App.1988).

morialization of it in the judgment no longer was. Both parties motioned the court to clarify the now unclear judgment. We believe the correcting of the judgment was a justifiable reason to change the original order under Rule 60(b).

■ Finally, we hold that the motion, made seven weeks after the judgment, was within a reasonable time. Accordingly, we affirm the trial court's judgment clarifying its original order.

■ The appellants' appeal from the trial court's second post-judgment order, which modified an earlier order requiring appellee to keep his gate closed, will be discussed in connection with appellee's cross-appeal below. After reviewing the record, we find appellant's argument that the trial court's decision to limit both parties use of firearms was an abuse of discretion to be without merit.

Limiting The Use Of The Easement

■ On January 19, 1992, the trial court held a hearing on an Order To Show Cause. The trial court ruled that appellee must keep his gates, which access the easement, closed except when he is present. The trial court reasoned that this restriction on the use of the easement was fair and consistent because the court had imposed a similar restriction upon appellants.

■ The extent of a prescriptive easement is measured and limited by the historic use of the dominant estate owner during the prescriptive period. *McBride v. McBride*, 581 P.2d 996, 997 (Utah 1978). The trial court, in requiring appellee to keep his gates closed, limited appellee's use of the easement based on equity and not on appellee's historical use of the easement. To this extent the trial court's ruling was improper as a matter of law. The record indicates that historically, appellee's cattle had unlimited access to and over the easement so the cattle could reach their only source of water. Thus, appellee was entitled to leave his access gates open.

Because we reverse the trial court's ruling concerning the requirement that appellee's gates be kept closed, the appellants'

appeal concerning the subsequent modification of that ruling is moot.

Contempt

■ It is generally accepted that the issuance of an order relating to contempt of court is discretionary with the trial judge. *Bartholomew v. Bartholomew*, 548 P.2d 238, 240 (Utah 1976). We will not overturn a trial judge's determination unless it is so unreasonable that it can be classified as arbitrary and capricious or a clear abuse of discretion. *Id.* To find contempt, the court must find from clear and convincing proof that the contemnor knew what was required, had the ability to comply, and willfully and knowingly failed and refused to do so. *Von Hake v. Thomas*, 759 P.2d 1162, 1172 (Utah 1988). The court's findings may be written separately or "gleaned from the transcript, the opinion or the memorandum decision." *State v. Hurst*, 821 P.2d 467, 471 (Utah App.1991). "The ultimate test of the adequacy of a trial judge's findings is whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision." *Id.* (quoting 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2579 (1971)).

■ After the original trial, the court issued a lengthy memorandum decision holding, among other things, that the easement was "for the general purpose of ingress and egress to herd and transport livestock, for trucks, tractors and motor vehicles of all types and for all types of farm equipment, including heavy farm equipment." Not long after the trial, it became apparent that both parties were failing to abide by the trial court's decision. The court held a clarification hearing, at which time evidence was presented concerning both parties' failure to follow the court's order. Evidence was introduced showing that appellee had dumped onions along the easement, using it as a feed lot. The trial court severely reprimanded the parties and found appellee and one appellant in contempt of court. The court, however, suspended all of the contempt orders, conditional upon specific actions by the par-

ties and future compliance with the court's orders. The court went on to state:

> I want you to listen to this, Mr. Kunzler. Your easement by prescription is not a fee title, it's not a long-term right, as you would go out and lease property. It is an easement and it was described clearly in the court's order. In paragraph three, "The easement awarded to the plaintiff is an easement by prescription and is for the general purpose of ingress and egress to herd and transport livestock, for trucks, tractors and motor vehicles of all types, and for all types of farm equipment, including heavy farm equipment." That is the right that you have in that property and it's an easement. It's not to—*it's not to go out and dump onions on and feed cattle.*

(Emphasis added.) The clarification hearing ended with the court admonishing both parties to "start recognizing that you've got to follow court orders." The court specifically put both parties on notice that if their conduct continued and they failed to comply with the conditions the court set out, they would be found in contempt.

On January 29, 1992, both parties were again before the trial court pursuant to an Order To Show Cause. The court went through the conditions the parties were to comply with and found that appellants had made every effort to follow the court's order. On the other hand, evidence was heard that appellee had again dumped literally "tons" of onions on the easement and allowed his cattle to feed on it. The onions and the ground conditions were such that a four wheel drive truck with a snow plow attached to the front could not remove all of the onions. Complete removal would require "heavy equipment" such as a backhoe. The trial court had appellee's counsel read the original order regarding the easement and asked appellee if he recalled seeing the written decision. Appellee nodded in the affirmative. The court then stated:

> [I]t should have been abundantly clear [from the written decision] that this is not your property. You merely have certain easement rights, as the Court specified and as your counsel just read to you. That was the original order. This prop-

erty belongs to the [appellants]. That's what the Court has ordered and that's what you, through your actions, have failed, intentionally failed, to accept. That's why we came back into court another time on a contempt of court hearing and that's when the court made its order of September the 9th, again with you in open court, that the easement by prescription awarded to plaintiff is not to allow nor does it allow dumping of onions on the easement or feeding of cattle, but only those purposes specified in the Court's order of July 19, 1991.

We agree with the trial court that it was abundantly clear appellee knew what was required of him. The court also found that "Utah Onions was able to dump onions on the south end of [appellee's] property successfully without dumping them on the right of way," and that appellee "should be able to find ways to feed [his] cattle without exerting rights over property ... in excess of what this court has *specifically* defined." (Emphasis added). Finally, given the clarity, directness, and number of the times the court told appellee not to dump onions on the easement, we agree with the trial court which specifically found, on three separate occasions, that appellee had intentionally violated the court's order.

Appellee argues that because the court's September 9th Clarification Hearing Order was not entered until after appellee's contemptuous acts, appellee's ability "to know exactly what the Trial Court had ordered was frustrated." We disagree. The court's original decision was entered well before the latest dumping incident and clearly set forth the proper use of the easement. At the clarification hearing the court called appellee by name and specifically told him that dumping onions was inappropriate behavior. The order was devoid of any legal jargon and appellee's attorney was present to explain any possible misunderstanding, just as he was at the previous hearings on this very same matter. The trial court told both parties that they had better start following court orders and specifically put them on notice

that if they did not they would be in contempt. We fail to see how appellee could understand the court order any better simply by having it written down. The trial court could not have been clearer as to its intentions and the content of the order. Appellee had the ability to comply with the court's order and willfully failed to do so. We hold the trial court's findings to be sufficiently comprehensive to provide a basis for its decision.

Accordingly, the trial court did not abuse its discretion by finding appellee in contempt. Likewise, given the facts of this case, we do not consider the trial court's order of five days in jail plus attorney fees and court costs to be an abuse of the trial court's discretion.

## CONCLUSION

For the reasons stated above we affirm the trial court's post-judgment order of January 10, 1992. We also affirm the trial court's order of March 23, 1992, except for the court's ruling that appellee must keep his access gates closed, which we reverse.

GARFF, J., concurs.

BENCH, Judge (dissenting in part):

I respectfully dissent from the affirmance of the trial court's contempt order because the trial court did not make the requisite findings and conclusions.

In *Von Hake v. Thomas*, 759 P.2d 1162, 1172 (Utah 1988), the supreme court unequivocally required that trial courts make explicit findings on each of the following substantive elements of contempt: "the person cited for contempt knew what was required, had the ability to comply, and intentionally failed or refused to do so. These three elements must be proven beyond a reasonable doubt in a criminal contempt proceeding." *Id.* at 1172 (citations omitted); *see also State v. Hurst*, 821 P.2d 467, 471 (Utah App.1991). This court recently made clear in *State v. Long*, 844 P.2d 381 (Utah App.1992), that "the criminal contempt power should only be used to sanction deliberate contumacious acts or omissions. As the United States Supreme

Court has observed: 'The very amplitude of the [contempt] power is a warning to use it with discretion, and a command never to exert it where it is not necessary or proper.'" *Id.* at 387 (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 451, 31 S.Ct. 492, 502, 55 L.Ed. 797 (1911)). My colleagues disregard this admonition by affirming the criminal contempt order in this case even though the trial court did not make the explicit findings required by *Von Hake*.

There is no explicit finding by the trial court in the record that Kunzler "knew" what was required, i.e., that he could not dump onions on the road. At best, the trial court found that he "should have known" that he could not dump onions on the road. Such a finding imputes knowledge to Kunzler. This court expressly held in *Long* that a negligent failure to comply with a court order does not constitute contempt. *Id.* Imputed knowledge is an insufficient mens rea for criminal contempt. *See Long*, 844 P.2d at 386–87 (trial court erred in finding contempt when attorney was confused about how to comply with the rules, even though the rules were clear). Kunzler asserts that he did not understand the judge's instruction until he received it in writing, which was after the violation for which he was cited. If that is so, then he did not actually "know" at the time he dumped the onions that he was violating the order.

The majority opinion erroneously focuses on the clarity of the trial court's oral instructions in court. The issue is not the clarity of the trial court's order that Kunzler was awarded only a prescriptive easement and not a fee simple. The issue is the clarity of Kunzler's actual understanding of what was required of him. *See Long*, 844 P.2d at 387. Given the anxiety and commotion that accompanies a trip to court, it is quite possible that Kunzler did not understand everything the judge said from the bench. Kunzler is a farmer, not a lawyer. Yet the main opinion imputes to him a lawyer's understanding of the trial court's instruction—taken from a cold record, after the fact. The majority refers to

the fact that Kunzler's lawyer was at the hearing and could have clarified the trial court's ruling if Kunzler did not understand it. There is no evidence in the record, however, that the attorney ever provided Kunzler with any explanation. It would be absurd to hold that Kunzler may be held in contempt for not acting in accordance with his lawyer's unexpressed knowledge and understanding of the trial court's ruling. Given the complexity of court proceedings and Kunzler's lack of legal training, there remains a reasonable doubt as to whether Kunzler himself actually understood the trial court's oral instruction when it was initially given from the bench. The trial court never found to the contrary.

No matter how strongly the trial court or my colleagues may believe that Kunzler *should have known* that he was violating a court order, the test set forth in *Von Hake* is whether Kunzler in fact did know he was violating an order. By affirming the trial court's contempt order when the trial court did not make a finding that Kunzler actually knew what was required, the majority eliminates the need for an express finding on the knowledge element. In other words, the majority effectively, and impermissibly, overturns the supreme court's test as stated in *Von Hake*. Kunzler was held in contempt without any assurance that the trial court actually found beyond a reasonable doubt that he knew what was required of him and that what he did was a violation of the court order and an obstruction of the judicial process. *See Long,* 844 P.2d at 387 (contempt under section 78–32–1(3) requires a showing that defendant "intended his acts to obstruct the judicial process").

Even if the trial court's cryptic findings could be stretched far enough to constitute the requisite findings required in *Von Hake,* they are nevertheless inadequate for review because they are not "sufficiently detailed and [do not] include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached." *Rucker v. Dalton,* 598 P.2d 1336, 1338 (Utah 1979). In the field of criminal contempt, facts pertaining to knowledge, ability, and intent are evasive

and may require multiple subsidiary factual findings to truly capture them. This court recently held in *Long* that an express finding that a contemnor acted willfully, without subsidiary factual findings to support that conclusion, was insufficient and required reversal. 844 P.2d at 387. In affirming the contempt order in the present case, the majority opinion does not point to any subsidiary findings that disclose the steps taken by the trial court in reaching its ultimate findings. Instead, the majority opinion independently reviews the record, weighs the evidence, evaluates witness credibility, draws its own conclusions, and effectively creates its own subsidiary findings. Such appellate court factfinding is clearly impermissible. "Our duty is to review the findings actually made by the trial court, not to make our own findings. In effect, the majority is sitting as both the trial court and the appellate court by making its own findings and then affirming them." *See State v. Mirquet,* 844 P.2d 995, 1005 (Utah App.1992) (Bench, P.J., dissenting) *cert. granted,* No. 930098–SC (Utah May 19, 1993).

The lack of explicit findings on each requisite element of contempt, and the lack of supporting subsidiary findings, cannot be lightly dismissed—especially when criminal contempt and incarceration are at issue. It very well may be that the trial court had adequate grounds for issuing its contempt order. But until the trial court enters the requisite findings showing those grounds, the contempt order cannot stand. *Von Hake,* 759 P.2d at 1173.

Findings are not a mere formality, they are "an integral part of the logical process a tribunal must go through in reaching a decision." *Adams v. Board of Review of Indus. Comm'n,* 821 P.2d 1, 7 (Utah App. 1991). Consequently, when we vacate an order for inadequate findings and remand the matter, the trial court is not expected to make findings that simply "bolster" the previous decision. *See Allred v. Allred,* 797 P.2d 1108, 1112 (Utah App.1990); *State v. Starnes,* 841 P.2d 712, 716 (Utah App. 1992) (hearing on remand not to be used to "bolster" trial court's previous decision).

Once [a tribunal] attempts to state its findings, identify the applicable law, and articulate its logic, it may discover that critical facts are not properly before it, that the law is other than anticipated, or that its initial logic is flawed. In such situations, a result contrary to the initial conclusions of the [tribunal] may be dictated.

*Adams*, 821 P.2d at 7–8. Inasmuch as the trial court has not entered the requisite findings, only the trial court knows whether it followed *Von Hake* and actually found that Kunzler knew what was required. Unfortunately, given the majority's ruling today, neither we nor Kunzler will ever know whether the trial court properly followed *Von Hake*.

I would reverse the contempt order and remand for entry of the explicit findings required by *Von Hake* and adequate subsidiary findings showing how the trial court reached those ultimate findings.